THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* HARRY O. WILLIAMS, Defendant.

County Court, Broome County, May 22, 1952.

*Donald W. Fuller* for defendant.

*Charles D. Keane* for Broome County Fraternal League, *amicus curiæ.*

*Robert E. Fischer, District Attorney* (*Mahlon H. Card* of counsel), for plaintiff.

BRINK, J. This is a motion to inspect the Grand Jury minutes and for an order dismissing the indictment upon the grounds, that the evidence before the Grand Jury was insufficient to support the indictment, charging the defendant with offering property for disposal dependent upon the drawing of a lottery in violation of section 1376 of the Penal Law. Upon the argument of the motion, the District Attorney conceded the facts as set forth in the defendant's moving papers. The court has also read the Grand Jury minutes.

The defendant on the 23d day of February, 1952, operated and directed a bingo game or party, in the Odd Fellows Hall on Exchange Street, in the village of Endicott, Broome County,

New York. The bingo game was conducted on two floors of the building; the hall on the first floor of the building and also in two rooms in the basement.

The affidavit verified by the defendant's attorney, Donald W. Fuller, sets forth the following additional facts:

Posted in the windows and throughout the building where the party was conducted were posters which clearly stated: " all games free. All players eligible for all prizes. Chair and table space reserved for members of the Broome County Fraternal League."

In the lobby of the building, immediately adjacent to the entrance door, each person entering the building was handed or offered four Bingo boards, for which no charge was made or solicited, and with which he could play all games and win any and all prizes.

All persons who desired to join the Broome County Fraternal League were handed an application form, which was signed by all applicants, and which clearly stated, among other things, that payment for chair and table space was not a consideration for admission to the party, participation in any game, or receipt of any prize.

Membership desks for receipt of such applications were set up, 132 applications for membership in the League were received, and a similar number of membership cards issued.

Two ticket booths were operated where those League members desiring chair and table space were able to obtain chair and table space tickets upon showing their membership card and payment of $2.00, and during the course of the party 119 of the 132 persons who became League members obtained chair and table space in such manner.

Upon entering the Bingo rooms, those with chair and table space tickets received a folding chair which they were at liberty to place wherever they desired at the tables, and those without such tickets were directed to areas on each floor reserved for their use, and so indicated by posters.

That during the course of the party there were persons playing who did not have chair and table space, and approximately fifteen persons so participated in all or part of said party. Those who did not have chair and table space had exactly the same number of playing boards, played exactly the same games and were eligible to receive exactly the same prizes as those who did obtain chair and table space.

That immediately prior to the commencement of the party, deponent read to all assembled an announcement, which contained, among other things, an offer to refund any payment made for chair and table space by anyone who had the idea or belief that such payment was necessary to participate in the party or to be eligible for any prize.

Thirty-one Bingo games were played and cash prizes of approximately $200 were awarded to the various winners of these games.

These facts are borne out by the Grand Jury testimony. In addition to the facts set forth in defendant's moving papers, it appears from the Grand Jury testimony, that at approximately 8:05 P.M. on the first floor, there were approximately sixty people seated in chairs playing bingo and three standing; in the two rooms downstairs, there were fifteen people playing in one room, and forty to fifty playing in the other, and of this

number three were standing. It further appears, that the people who were seated, remained seated, and the standees would vary, in that there were more as the game progressed, but not to any great extent. It was established by the evidence before the Grand Jury, that the standees were allowed to participate in playing all games of bingo throughout the evening, without the payment of any admission or consideration of any kind. It also appears from the Grand Jury minutes, that numbers one to seventy-five were drawn out of a plastic ball, which was agitated by air in a glass chamber. The drawing took place in the basement and was communicated to the players by two lighted boards, one in the basement and one in the first floor. There was a microphone communication between the basement floor and the first floor for checking the playing boards.

It is conceded by the District Attorney and counsel for the defendant, that three elements are necessary to establish and to constitute a lottery, within the meaning and intent of sections 1370 and 1376 of the Penal Law: (1) a consideration; (2) the element of chance; and (3) a prize or some advantage or value in the nature of a prize. There is no question, but that the game of bingo as generally known and as conducted in this case, is a game of chance. The winning of the game depends upon the drawing of numbers by chance, to correspond with groups of numbers in a line on cards held by the players. It appears from the evidence before the Grand Jury and from the defendant's moving papers, that cash prizes were distributed to winning players at the time and place specified in the indictment.

However, it is seriously contended by counsel for the defendant, and the attorney for the Broome County Fraternal League, that there was no consideration for the game, due to the fact, that standees were admitted and permitted to play without charge. The further contention is made in behalf of the defendant, that the renting of chairs for $2 each, did not constitute a consideration for the bingo game and that the payment of $2 merely gave the players the additional comfort of sitting in chairs and having access to tables on which they might rest their boards as they played.

It may be conceded, that, if all of the players stood and played without being charged admission or, if chairs were furnished without charge, there would be no consideration for the game and, consequently, no violation of the statute. However, bingo games whether operated by individuals or organizations are generally operated for profit and this case is no exception. It is true, that often the proceeds from these games have

been used by fraternal and religious organizations for charitable purposes. However, an altruistic intent is not a legal justification for a violation of a statute.

It is apparent, that this defendant has attempted to contrive a scheme or plan, whereby, he can conduct a bingo game for profit and circumvent the law. When we say, that a participant in this game was admitted free to play bingo as a standee, and that money was only obtained from the rental of chairs, it might seem upon a cursory examination of the facts, that the player was only paying for a chair. However, he was not paying merely for the privilege of sitting down; he was paying for *a chair at a bingo game.* If the lottery was not furnished, there would be no reason for him to rent the chair, therefore, the lottery becomes a part of the consideration for the payment of the $2.

In the case of *People* v. *Miller* (271 N. Y. 44), the Court of Appeals held that a payment which entitles one to a ticket of admission to a theatre, plus a chance to win a prize, constitutes payment of a valuable consideration for the chance, within the meaning of section 1370 of the Penal Law, defining a lottery. In the *Miller* case, the ticket purchaser received entertainment, as well as a chance to win a prize. In the case now under consideration, the purchaser of a seat, obtained an opportunity to play bingo, as well as the use of a chair and table. As it appears that the greater number of participants rented chairs and they were the only paying customers, it is reasonable to assume, that the bingo game was held and conducted for their benefit. The fact, that standees were allowed to play free, seems only incidental to the real purpose and intent of the project. In the field of entertainment, the practice of charging admission by renting a seat is very common, at sporting events, concerts and theatrical performances. In any of these activities, if standees are admitted without charge, the exhibition must still be characterized as a profit making enterprise.

In the case of *People* v. *Cadle* (202 Misc. 415, 419) in the County Court of Monroe County, which involved a similar situation, although the question was not squarely raised and involved only the question of the sufficiency of the information, Judge O'MARA, in sustaining the information stated: "In the cases presently under consideration, there was no admission fee for entertainment of any kind and the sole purpose of those in attendance was to play the game of bingo. I would therefore come to the same conclusion with reference to the sufficiency of the informations even though it appeared from their context

that it was possible for persons to participate in the game without the payment of any consideration.''

I am satisfied that the evidence before the Grand Jury in this case, is sufficient to support the indictment for the crime of offering property for disposal, dependent upon the drawing of a lottery in violation of section 1376 of the Penal Law.

The defendant's motion for inspection of the Grand Jury minutes and for an order dismissing the indictment is denied and an order may be prepared accordingly.