THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* CARLTON CADLE, Respondent.

Fourth Department, December 17, 1958.

*Harry L. Rosenthal, District Attorney (Leon N. Armer* of counsel), for appellant.

*George Hoffenberg* for respondent.

WILLIAMS, J. This is an appeal from an order of County Court which allowed a demurrer to an indictment and dismissed the same.

The indictment, in two counts, charges violations of sections 1370, 1372 and 1376 of the Penal Law. These sections, dealing with lotteries, read as follows:

"§ 1370. * * * A 'lottery' is a scheme for the distribution of property by chance, among persons who have paid or agreed to pay a valuable consideration for the chance, whether called a lottery, raffle, or gift enterprise or by some other name."

"§ 1372. * * * A person who contrives, proposes or draws a lottery, or assists in contriving, proposing or drawing the same, is punishable by imprisonment for not more than two years, or by fine of not more than one thousand dollars, or both."

"§ 1376. * * * A person who offers for sale or distribution, in any way, real or personal property, or any interest therein, to be determined by lot or chance, dependent upon the drawing of a lottery within or without this state, or who sells, furnishes, or procures, or causes to be sold, furnished, or procured, in any manner, a chance or share, or any interest in property offered for sale or distribution, in violation of this article, or a ticket or other evidence of such a chance, share, or interest, is guilty of a misdemeanor."

The indictment sets out substantially the statutory language of the above sections and then continues: "Those participants who desired to sit down in order to participate in the lottery known as 'Bingo' conducted by defendant signed for the receipt of a folding chair, and paid to the defendant the sum of One Dollar ($1.00) and were immediately issued a folding chair; upon entering the room in which the lottery known as 'Bingo' was continued and conducted by the defendant, the participants each received a board on which were printed six 'Bingo' cards, each * * * headed 'Bingo'."

It is defendant's contention, and the County Court apparently so decided, that the indictment fails to allege the payment of any consideration and therefore that no lottery took place.

Upon a demurrer the facts stated in the indictment must be assumed to be true (*People* v. *Decina*, 2 N Y 2d 133, 139), as well as everything that can be implied by fair and reasonable intendment from those facts (*People*

v. *Wright,* 12 Misc 2d 961, 964). Further: "The indictment is sufficient if it identifies the charge against the defendant so that his conviction or acquittal may prevent a subsequent charge for the same offense; notifies him of the nature and character of the crime charged against him to the end that he may prepare his defense; and enables the court upon conviction to pronounce judgment according to the right of the case." (*People* v. *Farson,* 244 N. Y. 413, 417.) The indictment is to be construed liberally rather than in a technical or impracticable manner. So long as no substantial right of the defendant is prejudiced, the court should take a liberal approach and look to the realities of what the indictment alleges (*People* v. *Williams,* 243 N. Y. 162, 164, 165).

At the very least, the allegation in the indictment as to the payment of $1 by " participants " who desired to sit down raises a question as to what this was consideration for. Defendant argues that, on its face, it is payment for the use of the seat, but, as is pointed out cogently in *People* v. *Williams* (202 Misc. 420, 423): " It is apparent, that this defendant has attempted to contrive a scheme or plan, whereby, he can conduct a bingo game for profit and circumvent the law. When we say, that a participant in this game was admitted free to play bingo as a standee, and that money was only obtained from the rental of chairs, it might seem upon a cursory examination of the facts, that the player was only paying for a chair. However, he was not paying merely for the privilege of sitting down; he was paying for *a chair at a bingo game.* If the lottery was not furnished, there would be no reason for him to rent the chair, therefore, the lottery becomes a part of the consideration for the payment of the $2."

The purpose of the $1 payment seems fairly clear, but at least its determination should await proof at trial. Certainly it cannot be said that the payment by " participants " was not consideration for a lottery as a matter of law.

In *People* v. *Cadle* (202 Misc. 415, 417–418) the language of the information appeared to be substantially the same as in the indictment before us. The court said: " Surely one can draw the inference, especially from the language used in the information charging a conspiracy, that the element of ' consideration ' was lacking as regards the persons who participated in the game while standing but it is not believed that the court has any legal right to indulge in inferences that may be drawn from an otherwise sufficient information." The court also pointed out very realistically that regardless of whether the information had shown that people could play without paying,

the result should still be the same because the only reason for anyone being there was the conducting of the lottery. In the *Williams* case (202 Misc. 420, 422, *supra*), the court indicated that: "bingo games whether operated by individuals or organizations are generally operated for profit and this case is no exception."

The present indictment does not specifically state that one might play without paying, and we see no reason to draw such an inference as against the indictment. But the defendant would have us draw the inference that if no one purchased chairs, the game would nevertheless continue on and cash prizes be given. This would lead to a most naive interpretation of the language of the indictment. The chair and the subsequently delivered board obviously are a part of the bingo plan and an adjunct to the game. The sale or rental is a part of the entire scheme, and without such rentals, bingo could not go on from a financial standpoint and probably not because of the physical inability of a large group to play while standing and manipulating six-card "Bingo" boards and markers. The chairs were an intrinsic part of the entire illegal operation.

The defendant relies primarily on two decisions, both of which were cited by the County Court to support the decision below. It is noteworthy that both of these cases were decided after all of the facts had been developed at trial. The first of these (*People* v. *Shafer,* 160 Misc. 174, affd. 273 N. Y. 475) held that a "Bank Nite" scheme was not a lottery because there was no valuable consideration received by the defendant. People could register and win a prize by standing in the theatre lobby without having to make any payment. Additional entertainment in the form of a motion picture was provided to those who did pay and enter the theatre. The second is *People* v. *Burns* (304 N. Y. 380). In that case, a one-hour vaudeville show preceded a "free" Bingo game, and a consideration of $1.25 was required of all who entered. There was evidence that $1.25 was fair consideration for the vaudeville show and it was contended, therefore, that there was no consideration for the lottery.

We fail to see that either of these cases is particularly pertinent. They involved entirely different factual situations and were decided on different bases. In the *Burns* case, at the trial, proof was introduced to show that 19 people were admitted free of charge after the vaudeville show to participate in the lottery, but this does not appear to be a controlling part of the case, nor did the court so indicate in its short *Per Curiam* opinion. The *Shafer* case has many of the aspects of the *Burns* case.

Actually, most of the cases considering similar factual situations have been decided on a case-to-case basis.

The defendant also cites *People* v. *Mail and Express Co.,* 179 N. Y. S. 640, affd. 192 App. Div. 903, affd. 231 N. Y. 586. A newspaper had a scheme to build circulation by giving away cash prizes. No charge was made for the right to participate. The court held merely that there was no consideration and, therefore, no lottery. This decision has no real application to the present case, apart from the fact that it recites the general rule that consideration is necessary for a lottery to exist.

The order appealed from should be reversed and the demurrer disallowed.

All concur. Present — McCurn, P. J., Williams, Bastow, Goldman and Halpern, JJ.

Order reversed and demurrer disallowed.