**KNOX INDUSTRIES CORP. et al. v. STATE ex rel. SCANLAND.**

No. 35525.

Supreme Court of Oklahoma.

June 23, 1953.

V. P. Crowe and John W. Swinford, Oklahoma City (Embry, Johnson, Crowe, Tolbert & Boxley, Oklahoma City, of counsel), for plaintiffs in error.

Granville Scanland, County Atty., pro se.

Hubert Gibson, Asst. County Atty., Oklahoma City, for defendant in error.

CORN, Justice.

Defendant, Knox Industries, Inc., owns and operates numerous service stations and automotive parts stores in the principal cities of eight counties in this state. As an advertising medium, and to create public good will, defendant inaugurated and widely publicized a plan to give away an automobile in each 52 day period of the calendar year 1952. April 16, 1952, this action was

brought to enjoin defendants from operating a lottery in violation of the provisions of 21 O.S.1951 § 1051, which provides:

"A lottery is any scheme for the disposal or distribution of property by chance among persons who have paid, or promised, or agreed to pay any valuable consideration for the chance of obtaining such property, or a portion of it, or for any share of or interest in such property, upon any agreement, understanding or expectation that it is to be distributed or disposed of by a lot or chance, whether called a lottery, a raffle, or a gift enterprise, or by whatever name the same may be known. Provided, it shall not be a violation of the lottery or gambling laws of this state for a bona fide resident merchant or merchants of a city or town, acting together or in conjunction with the Chamber of Commerce or Commercial Club thereof, to issue free of charge numbered tickets on sales of his merchandise, the corresponding stub of one or more of which tickets to be drawn or chosen by lot by a representative or representatives of said Chamber of Commerce or of said Commercial Club in the manner set forth on said tickets, the numbered stub or stubs so drawn to entitle the holder of the corresponding numbered issued ticket to a valuable prize donated by said merchant. R.L. 1910, § 2470; Laws 1929, ch. 19, p. 16 § 1."

The petition alleged defendants, the named individuals being operators and managers of defendant's gasoline service stations in Oklahoma county, Oklahoma, with having conducted and carried on a lottery in the manner hereinafter described in the quoted "Contest Rules."

"Any person over 21 years of age may qualify to win the 1952 Ford.

"All winners will be selected by drawing from the *ticket stubs deposited by the participants* in the containers maintained in Knox Serv-Ur-Self Stations and Stores.

"The date of each drawing will be announced in advance.

"Drawings will be held at approximately 52 day intervals for the duration of this program. The date and location for each subsequent drawing will be posted in all Knox Stations and Stores. The management reserves the right to postpone any drawing for a period up to two weeks."

How To Qualify To Win a Prize.

1. "Go into any Knox Service Station or Store and ask for a ticket. There is no cost. No purchase is required. There is no obligation, nothing to write; not a contest. Retain the ticket which you will be given. Tear the stub in the container maintained in each station. This is all that is necessary to qualify you to win.

2. "Each ticket so received entitled you to one chance to win the 1952 Ford. You may receive and hold any number of tickets.

3. "You do not need to be present at any drawing. The winning numbers will be posted in all Knox Service Stations and Stores.

4. "Ticket stubs may be deposited up until 12:00 Noon on the day of the drawing. Any ticket stub which is not deposited before 12:00 Noon will not be counted. At 12:00 noon on the day of the drawing, ticket-stub boxes will be emptied and beginning at 12:00 Noon, all tickets given away by station attendants will apply upon the next following drawing.

5. "At the drawing, three numbers will be drawn and listed in the order drawn. The 3 numbers will be posted in each Knox Serv-Ur-Self Station and Store. Winners will not be notified as there is no record of the name of ticket holders. Posting of the winning numbers constitute notice. The holder of the ticket corresponding to the first number drawn will have 7 days from 8:00 P.M., on the date of the drawing in which to present the winning ticket and claim the Ford. If the winning ticket is not presented by 8:00 P.M., on the 7th. day, the number will

become disqualified and the second number will become eligible to win the Ford. The second number will have 24 hours in which to be presented. Each number thereafter in rotation will become eligible for 24 hours until the winner claims the automobile.

6. "Only three tickets will be drawn. All tickets are winners. Tickets that do not show up will forfeit. If a ticket does not show up, all other following tickets move up one place to fill the vacancy.

7. "Tickets that do not appear on the posted winners' sheets may be discarded after the drawing, as the same tickets will not be eligible at the next drawing.

8. "If your number is drawn, present your ticket at the main office of Knox Industries Corporation, Knox Building, Enid, Oklahoma, within the prescribed time limit. Participants are advised not to present winning tickets other than between the hours of 8:00 A.M., and 5:00 P.M. week days and 8:00 A.M., and 12:00 Noon Saturday.

9. "When the ticket presented by a winner has been matched with the corresponding ticket stub, arrangements will be made for the delivery of the car. If a winning ticket is lost, no facsimile, affidavit, photostatic copy, or other evidence of ownership of the winning ticket will qualify the participant. The matching of winning tickets with winning stub shall be under the sole jurisdiction of Knox Serv-Ur-Self Station and Store officials and their decision shall be final. Any ticket adjudged by them to be counterfeit or invalid shall be voided without recourse to the holder thereof.

10. "No employee of Knox Serv-Ur-Self Stations or Stores, or their advertising agencies or any members of the immediate families of the employees of the aforementioned may participate.

11. "This program is intended strictly as an advertising medium. It may be discontinued at any time after any drawing without notice.

12. "The rules as herein contained are subject to change at all times."

A temporary restraining order was entered upon filing of the petition. Defendants filed answer admitting operation of a contest as described in the above quoted rules, but specifically denied same constituted a lottery because:

"* * * participants in said contest may secure chances on such car without the payment of any consideration for such chance and without purchasing any merchandise or other thing of value from defendants, whether they be customers of defendants or not, and defendants deny that any of such participants have paid, promised, or agreed to pay anything of value for a ticket entitling them to participate in the giving away of such cars, and such tickets are issued without charge to the public indiscriminately, * * *".

The parties stipulated the contest had been, and if not enjoined would continue to be conducted in strict accordance with the rules; defendant operated in the principal cities in eight counties within the state, where anyone desiring to participate in the contest might secure tickets without paying, promising, or agreeing to pay anything of value therefor. At the hearing the parties further stipulated no questions concerning "prize" or "chance" were involved, the only question for determination being whether "consideration" was involved.

The case was submitted to the trial court upon the pleadings and stipulations, and after consideration of the matter the court determined that the scheme constituted a lottery within contemplation of the statute and permanently enjoined defendants from operating same at the business locations within Oklahoma county.

In seeking to reverse the judgment defendants contend the trial court erred as a matter of law in finding this scheme or enterprise constituted a lottery under 21 O.S.1951 § 1051, supra. Defend-

ants recognize the force of our holding in State ex rel. Draper v. Lynch, 192 Okl. 497, 137 P.2d 949. However, defendants assert that much of what was said in that opinion was dictum, in that while dealing with the question of consideration we reached a conclusion contrary to the provisions of our statute, and at variance with decisions from other courts. We do not so construe our expression in the Lynch case, supra, but are of the opinion the analysis therein set forth was essential to determination of the question presented.

After concluding that most of our decision in the Lynch case was dictum, defendants then point out that two decisions relied upon in that opinion have been overturned by the same courts in reconsidering this problem. See Affiliated Enterprises, Inc., v. Gantz, 10 Cir., 86 F.2d 597; State ex rel. Dussault, Co. Att'y, v. Fox Missoula Theatre Corp., 110 Mont. 441, 101 P.2d 1065. In our former opinion we directed attention to the Gantz case and also the Dussault case, supra. Defendants now point out that more recently, in State ex rel. Stafford v. Fox Great Falls Theatre Corp., 114 Mont. 52, 132 P.2d 689, 696, that court reached a different conclusion upon reconsideration of this question; and, in so doing, that court attempted to distinguish between the reasoning in that decision and the Gantz case. The reasoning applied in the Gantz case was recognized and applied in the Lynch case.

Reference to the Montana courts decision in Fox Great Falls, etc., supra, discloses that such result was accomplished by acceptance of the principle that, " * * * to suffer detriment not describable in terms of value cannot logically be taken as meaning to pay valuable consideration."

The fallacy of such reasoning is apparent. Such a conclusion is diametrically opposed to the reasoning upon which our decision in the Lynch case, supra, is based. Therein we stated that " * * * things other than money can constitute a sufficient consideration, moving from the participants in such scheme to the operators, without any cash outlay being made." [192 Okl. 497, 137 P.2d 954] The present appeal affords no grounds for receding

from our former position, which we necessarily reaffirm herein.

Defendants also direct attention to the recent case of Garden City Chamber of Commerce, Inc., v. Wagner, D.C.N.Y.1951, 100 F.Supp. 769, as supporting their position. This decision recently was approved in American Broadcasting Co. v. U. S., D.C.N.Y.1953, 110 F.Supp. 374. The nature of the gift enterprise considered in the Wagner case, supra, was a scheme falling within a specifically exempted class under our statute. The conclusion reached by the Federal District Court in that instance does nothing to destroy the validity of our reasoning upon the matter.

Defendants also direct attention to the variance between the holding in State v. Schubert Theatre Players Co., 203 Minn. 366, 281 N.W. 369, cited in the Lynch case, supra, and on the conclusion more recently reached in Albert Lea Amusement Corp. v. Hanson, 231 Minn. 401, 43 N.W.2d 249. That court, after reviewing numerous decisions including the Lynch case, receded from its former position by declaring that there was no "payment" for the privilege of participating in the plan considered. We point out only that the reasoning upon which this result is based is in direct conflict with the reasoning and rule announced in our own decision in the matter.

However, defendants urge that even if our decision in the Lynch case should be approved, it does not follow that the scheme herein considered constitutes a lottery. Such argument is founded upon an attempted differentiation between the plan considered in the Lynch case, supra, and the present scheme, as a result of which defendants conclude that the seven elements constituting consideration (enumerated in the former case) are not present in the situation revealed by the stipulation of the parties.

Admittedly defendants are not conducting a philanthropic endeavor. The expressed purpose of this enterprise is the creation of good will and the opportunity for advertisement of defendants' products and merchandise. The resultant benefits from the public good will must be recognized. The value of the advertising can

neither be doubted nor minimized, since the general acceptability of defendants' products is made known thereby. But, more than this, the rule requiring prospective participants to secure tickets in order to become eligible necessarily demands that such individuals appear at defendants' places of business. By such appearances they are, of course, subjected to the sales appeal of defendants assorted merchandise· That this works to defendants' benefit must be conceded.

It is unnecessary to enumerate again the seven elements constituting consideration set out in the Lynch case, supra. Under defendants' analysis of the present case, it is urged that none of such elements appear in defendants' scheme. Contrary to such assertion we are of the opinion that three of these elements definitely appear as an integral part of the plan of operation.

(1). It is true defendants' plan does not require participants to appear and register to become eligible for the prize. Nevertheless, the rules do require any prospective participant to go to some Knox Service Station, or Store, and ask for a ticket. That this requires expenditure of time and inconvenience cannot be denied. Although tickets are issued indiscriminately, certainly it will not be contended that all the tickets would be issued to one individual, who might or might not choose to pass them on to others in order for them to participate. The very nature of the plan makes it certain defendents would not issue all the tickets, or large blocks of tickets, to any one individual, since obviously this would defeat the intent and purpose of the scheme.

(2). A second element of consideration present in this scheme is to be found in the fact all prospective participants are subjected to the sales appeal of the merchandise offered for sale at defendants' stores and stations. No one can doubt that when any individual appears at any store, to secure a ticket and become a participant in the hope of receiving a free automobile, that person is aware of the various commodities offered for sale there, and mentally compares the quality and price of such commodities with those offered for sale elsewhere. Moreover participants are able to ascertain the winning number by going to defendants' stores when same is posted, and, under the rules, agree to surrender the winning number within a specified time or be disqualified from winning by failure to do this.

(3). While no drawings are held at which participants are required to be present, the contest rules require that any participant whose number is drawn must claim the prize within certain specified hours, on particular days of the week, at defendants' main office in Enid, Oklahoma. Inasmuch as defendants operate extensively in various counties and cities within this state it is apparent that all participants impliedly agree, as consideration for becoming eligible to receive the prize, that they will expend further time and effort in appearing to claim the prize.

Upon this basis we are of the opinion the gift enterprise scheme sought to be operated by defendants comes within the inhibition of our statute, supra. Sufficient consideration moves from the participants to defendants as operators of the scheme. The language in United Detroit Theatre Corp. v. Colonial Theatrical Enterprises, 280 Mich. 425, 273 N.W. 756, quoted in the Lynch case, supra, is equally applicable here. Therein it was said:

"But while the patrons may not pay, and the respondents may not receive any direct consideration, there is an indirect consideration paid and received. The fact that prizes of more or less value are to be distributed will attract persons to the theaters who would not otherwise attend. In this manner those obtaining prizes pay consideration for them, and the theaters reap a direct financial benefit."

Having determined the presence of the enumerated elements in any scheme to be sufficient to support the finding of consideration, and having ascertained the presence of such elements of consideration in the present plan of operation, the rule originally announced in State ex rel. Draper v. Lynch, supra, expresses the applicable rule in this jurisdiction. The trial court

properly granted the application for permanent injunction.

Judgment affirmed.

HALLEY, C. J., and DAVISON, ARNOLD, O'NEAL and WILLIAMS, JJ., concur.

JOHNSON, V. C. J., dissents.