**MOBIL OIL CORPORATION, Respondent,**

v.

**John C. DANFORTH, Attorney General of Missouri, Appellant.**

No. 54937.

Supreme Court of Missouri, En Banc.

June 8, 1970.

Rehearing Denied July 13, 1970.

J. William Dalgetty, Harry P. Thomson, Jr., George E. Leonard, Shughart, Thomson & Kilroy, Kansas City, for respondent.

John C. Danforth, Atty. Gen., Christopher S. Bond, Wayne H. Hoecker, Asst. Attys. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for appellant.

DONNELLY, Presiding Judge.

In this suit for declaratory judgment and injunctive relief, the trial court declared that plaintiff's promotional game "International Flags" is not a lottery under Art. III, § 39(9), Const. of Mo. 1945, V.A.M.S., and § 563.430, RSMo 1959, V.A.M.S. (As amended Laws 1963, p. 684, § 1), and permanently enjoined and restrained defendant "from directly or indirectly interfering with or impairing or hindering plaintiff from conducting its promotional game * * *." Defendant appealed.

The rules of the proposed game provide that a licensed driver of an automobile may participate by going to a station selling Mobil products and obtaining "on the driveway at the pumps," "in the lube bed," or "in the sales room," a game piece and game card. He need not purchase anything, he may be a pedestrian, or he may be a passenger in an automobile.

When he opens the game piece, he may discover he has won up to $5, or he may receive a flag which may be affixed to the game card and which, with other flags in a required order, may entitle him to a prize of $5,000. He may turn in a winner at any participating Mobil station.

The number of persons who receive a game piece and do not purchase Mobil products is small.

Article III, § 39(9), supra, reads as follows:

"Section 39. The general assembly shall not have power: * * * (9) To authorize lotteries or gift enterprises for any purpose, and shall enact laws to prohibit the sale of lottery or gift enterprise tickets, or tickets in any scheme in the nature of a lottery."

Section 563.430, supra, reads as follows: "If any person shall make or establish, or aid or assist in making or establishing, any

lottery, gift enterprise, policy or scheme of drawing in the nature of a lottery as a business or avocation in this state, or shall advertise or make public, or cause to be advertised or made public, by means of any newspaper, pamphlet, circular, or other written or printed notice thereof, printed or circulated in this state, any such lottery, gift enterprise, policy or scheme or drawing in the nature of a lottery, whether the same is being or is to be conducted, held or drawn within or without this state, he shall be deemed guilty of a felony, and, upon conviction, shall be punished by imprisonment in the penitentiary for not less than two nor more than five years, or by imprisonment in the county jail or workhouse for not less than six nor more than twelve months, provided, however, that this section shall apply only where there is consideration in the form of money, or its equivalent, paid to or received by the person awarding the prize. As amended Laws 1963, p. 684, § 1."

The words "provided, however, that this section shall apply only where there is consideration in the form of money, or its equivalent, paid to or received by the person awarding the prize" were added by the General Assembly in 1963.

■ In Missouri, the "elements of a lottery are: (1) Consideration; (2) prize; (3) chance." State ex inf. McKittrick v. Globe-Democrat Pub. Co., 341 Mo. 862, 874, 110 S.W.2d 705, 713 (1937). The parties agree that "prize" and "chance" are present here. The dispute·is over "consideration".

In State v. McEwan, 343 Mo. 213, 120 S.W.2d 1098(1938), a "bank night" scheme at a theater was involved. Names of persons who purchased admission tickets and names of persons who were not required to purchase admission tickets were recorded in the theater's registration book. The names of all persons were drawn by lot. The person whose name was drawn, whether present in the theater or outside the theater without an admission ticket,

could claim the prize by promptly coming forward to the stage inside the theater. This Court en Banc held the scheme a lottery.

■ The "International Flags" game falls squarely within the prohibition of the McEwan case. There, the element of consideration was found even though some of the participants, paid nothing for the right to participate. Here, plaintiff contends the element of consideration is not present because participants need not pay anything for the right to participate although conceding the number of nonpurchasing participants would be small. If the McEwan case is to be followed, plaintiff's contention must fail.

The trial court explained his refusal to follow the McEwan holding by stating: "I recognize * * * that one can go to various states of the union and come up with almost any kind of answer desired. However, I am particularly impressed with the case of Cudd v. Aschenbrenner, the decision of the Supreme Court of Oregon, en banc, in [233 Or. 272] 377 P.2d 150. I suppose that one of the reasons that I am impressed with it, is the fact that if we adopt the philosophy expounded in that decision, we completely dispose of the bank night cases, particularly the ones in our own jurisdiction, State v. McEwan, for example. This Court adopts the position that the legislature defined the element of consideration for our purposes. Had it not done so it might well be within the judicial competence to define it on a common sense basis, and this Court adopts the Cudd v. Aschenbrenner decision as properly expounding a correct contemporary view of the matter in light of our own constitutional and statutory provisions."

*The questions thus presented are:*

(1) *Did the General Assembly "dispose of * * * State v. McEwan" when, in 1963, it defined consideration under § 563.-430, supra, as "money, or its equivalent, paid to or received by the person awarding the prize?"*

In determining the question, the judicial function is well-expressed in Weems v. United States, 217 U.S. 349, at 378–379, 30 S.Ct. 544 at 553, 54 L.Ed. 793, wherein the Supreme Court of the United States said: "We disclaim the right to assert a judgment against that of the legislature, of the expediency of the laws, or the right to oppose the judicial power to the legislative power to define crimes and fix their punishment, unless that power encounters in its exercise a constitutional prohibition. In such case, not our discretion, but our legal duty, strictly defined and imperative in its direction, is invoked. Then the legislative power is brought to the judgment of a power superior to it for the instant. And for the proper exercise of such power there must be a comprehension of all that the legislature did or could take into account,— that is, a consideration of the mischief and the remedy. However, there is a certain subordination of the judiciary to the legislature. The function of the legislature is primary, its exercises fortified by presumptions of right and legality, and is not to be interfered with lightly, nor by any judicial conception of its wisdom or propriety. They have no limitation, we repeat, but constitutional ones, and what those are the judiciary must judge. * * * "

In State ex rel. Dawson v. Falkenhainer, 321 Mo. 1042, 1046, 15 S.W.2d 342, 343 (1929), this Court en Banc said: "The Legislature has no power to give to the Constitution an interpretation which would be contrary to its terms. To the courts is given authority to construe the Constitution, and the Legislature must enact its laws in accordance with the Constitution as construed."

Our Constitution expressly provides that the General Assembly shall not have power to authorize lotteries for any purpose. Therefore, we do not believe the General Assembly intended to abrogate the McEwan holding, as it applies to the facts of this case, when it re-enacted § 563.430, supra, in 1963. To hold otherwise would be to ascribe to the General Assembly an intention to assume the power to define lotteries and thereby avoid the constitutional restriction by defining its limitations. The prohibition against lotteries must be considered by the courts on a case-to-case basis. An attempt to rigidly define the term "lottery" would serve only the interests of those who would devise a scheme of evasion "which may not be within the letter of the definition given but which nevertheless is within the scope of the mischief which the law seeks to remedy." State v. Bussiere, 155 Me. 331, 154 A.2d 702, 705.

It has been suggested that the General Assembly changed the statute in 1963 in order to bring Missouri in line with those states which hold that the "consideration" element of a lottery must be a "valuable consideration" as opposed to the formal, technical consideration necessary to support a contract. Cf. Lucky Calendar Co., v. Cohen, 19 N.J. 399, 117 A.2d 487, 495[6–9]. We need not rule the validity of this suggestion, or of its implications, on the fact situation presented in this case. In determining the question presented here, we have not painted with a broader brush than is necessary. We hold that the addition to the statute in 1963 does not affect the McEwan holding.

(2) *Should we reject the holding in State v. McEwan, supra, and adopt "the Cudd v. Aschenbrenner decision as properly expounding a correct contemporary view of the matter?"* We think not.

■ We are of the opinion that Article III, § 39(9), Const. of Mo. 1945, V.A.M.S., is self-executing, and was "designed to prevent one man from exploiting the weaknesses of his fellow men and to corrupt their moral characters, a corruption which always attends promoted gambling no matter how it may be coupled with the respectability of sport, advertising, business, church, or charity. Lottery gambling is worse than other forms of gambling because of its reach—its mass appeal—and because its temptations are set before so

many people at the same time." Williams, Lotteries, Laws and Morals, pp. 19–20. Our Constitution prohibits "lotteries or gift enterprises for *any* purpose" and *"any* scheme in the nature of a lottery." (Emphasis ours.) "Accordingly, to give effect to this broad interdiction, the courts must look into, through and around any schemes and devices which appear even superficially to constitute a lottery, and to apply the constitutional ban to all of them which in fact amount to a lottery." State ex rel. Schillberg v. Safeway Stores, Inc., Wash., 450 P.2d 949, 953 (1969).

We believe it would serve no useful or proper purpose for us to question the reasoning employed by the majority in Cudd v. Aschenbrenner, 233 Or. 272, 377 P.2d 150 (1962). It is sufficient to say that the views expressed therein conflict with the public policy of Missouri, first articulated in our Constitution of 1865. Kitchen v. Greenabaum, 61 Mo. 110, 115 (1875). We decline the opportunity to dilute the established law prohibiting all lotteries in Missouri. Our view finds strong support in Lucky Calendar Co. v. Cohen, supra, 19 N.J. 399, 117 A.2d 487, 492, 493 (1955), wherein Chief Justice Vanderbilt said:

"Of all the forms of gambling, lotteries have been the most condemned by the courts. Over a century ago the United States Supreme Court unanimously condemned their anti-social effects in comparison with ordinary gambling in sweeping terms that reflected judicial experience generally with lotteries:

'Experience has shown that the common forms of gambling are comparatively innocuous when placed in contrast with the widespread pestilence of lotteries. The former are confined to a few persons and places, but the latter infests the whole community: it enters every dwelling; it reaches every class; it preys upon the hard earnings of the poor; it plunders the ignorant and simple.' Phalen v. Commonwealth of Vir-

ginia, 8 How. 163, 168, 12 L.Ed. 1030, 1033 (1850).

"The lure of the chance for 'easy money' has not changed in the intervening century. The enormous profits to be had from lotteries have attracted the devious ingenuity of those who seek to profit by catering to the weakness of those whom the statute aims to protect, primarily for the benefit of society in general."

■ (3) *Do Missouri prohibitions against lotteries violate plaintiff's rights under the United States Constitution?* They do not. In Stone v. Mississippi, 101 U.S. 814, at 820–821, 25 L.Ed. 1079 (1879), the Supreme Court of the United States said: "The contracts which the Constitution protects are those that relate to property rights, not governmental. It is not always easy to tell on which side of the line which separates governmental from property rights a particular case is to be put; but in respect to lotteries there can be no difficulty. They are not, in the legal acceptation of the term, *mala in se,* but, as we have just seen, may properly be made *mala prohibita.* They are a species of gambling, and wrong in their influences. They disturb the checks and balances of a well-ordered community. \* \* \* Certainly the right to suppress them is governmental, to be exercised at all times by those in power, at their discretion."

We are of the opinion the trial court erred in declaring the promotional game "International Flags" is not a prohibited lottery. The judgment is reversed and remanded with directions to dissolve the permanent injunction.

HENLEY, C. J., FINCH, SEILER, MORGAN and HOLMAN, JJ., and HOGAN, Special Judge, concur.

BARDGETT, J., not participating because not a member of the Court when cause was submitted.