511 P.2d 725

Evelyn L. GEIS and Ed Geis, Plaintiffs
and Respondents,

v.

CONTINENTAL OIL COMPANY,
Defendant and Appellant.

No. 13049.

Supreme Court of Utah.

June 22, 1973.

John W. Lowe, of Brayton, Lowe & Hurley, Salt Lake City, for defendant and appellant.

Leland S. McCullough, Salt Lake City, for plaintiffs and respondents.

CALLISTER, Chief Justice:

Plaintiffs initiated this action to recover the prize they claimed that they had won according to the rules in a promotional contest sponsored by defendant. The matter was tried before a jury, and a verdict was rendered awarding plaintiffs general

damages of $1,000, and punitive damages of $1,500. The trial court ordered in the alternative a new trial or that plaintiffs agree to a reduction in the verdict from $2,500 to $1,000; the plaintiffs elected the latter. Defendant appeals, urging that the trial court erred when it denied defendant's motion for a judgment notwithstanding the verdict on the ground that plaintiffs had not complied with the rules of the contest by submitting legible entry cards.

Defendant had a promotional contest called "Brand in Orbit." Defendant's service station dealers distributed to customers small cards upon which there was situated spots covered with paper concealing thereunder printing which became visible when the paper was scraped with a coin. The card was divided into two sections, the winning combination in the upper section provided prizes in amounts of 50¢ to $5. The lower portion had one large spot which concealed one word. The object of the contest on the lower portion was to acquire a group of cards which in combination would reveal one of defendant's advertising slogans, such as, "Brand in Orbit," prize $2,500; "Ride the Hot One," $1,000; "Hottest Brand Going," $100; and "Go With Conoco," $25.

The contest was open to all licensed drivers; no purchase was necessary; and the game cards were free. Mrs. Geis was interested solely in the prizes to be awarded in the contest on the lower half of the card. Through her own patronage as well as that of her husband and his employees at defendant's service stations, she acquired 522 cards. According to the testimony of Mrs. Geis, she obtained two cards, which, when scraped, the word "HOT" appeared and then vanished; her husband witnessed this occurrence once. "HOT" was the control word in the slogan "Ride the Hot One." Mrs. Geis took her cards to defendant's agent and claimed the prize of $1,000. Defendant declined to make the award on the ground that the printing was illegible.

During the course of the trial, defendant presented evidence to the effect that there were special markings only discernible under ultra violet light on the control cards, and the two cards submitted by plaintiffs had neither the markings nor the indentations resulting therefrom. Defendant's expert was of the opinion that a sharp instrument had obliterated the printing on the cards urged by plaintiffs to be winners.

The trial court instructed the jury that if it found from a preponderance of the evidence that the two cards in question or either of them had the word "HOT" in the appropriate place and that plaintiffs had complied with the terms of the contest, they were entitled to recover. Furthermore, if they found that the winning cards were deliberately so devised and constructed that when rubbed in accordance with the instructions the lucky word appeared

dimly or illegibly and upon further rubbing disappeared, the jury might award exemplary damages.

On appeal, defendant urges that under the rules of the contest, plaintiffs were not winners. Defendant claims there was no evidence that the cards had been deliberately designed so that the winning words would disappear. Defendant cites authority to the effect that the rights of a contestant in a prize contest are limited by the terms of the offer, and there must be compliance with those terms before a contract is formed. The rules of the contest provided that all game cards are void if illegible, mutilated, forged, tampered with or irregular in any way. Defendant reasons that plaintiffs submitted two cards with the printing obliterated, which did not constitute performance of the act required, submitting legible cards; therefore, plaintiffs did not accept in accordance with defendant's offer, and there was no contract.

■ There is another aspect of this action, which this court is compelled to consider. An admonition is expressed in 87 A.L.R.2d, Anno: Prize Contests—Rights and Remedies, 649, 652, that the first task facing a contestant seeking to enforce rights allegedly acquired in a prize-winning contest is that of showing that the scheme was legal, for the courts uniformly refuse to lend their aid in the enforcement of an illegal agreement. In other words, since no action can be based on an illegal agreement, no private rights can arise from participating in a prize-winning contest, which is considered illegal, such as a lottery, which has been prohibited by constitutional or legislative provisions. In Blair v. Lowham [1] this court stated that the scheme for the disposition of the automobile in question was plainly a lottery within the statutory definition and was unlawful. Accordingly, this court refused to grant either of the parties relief where they relied solely on a transaction prohibited by law.

Article VI, Section 28, Constitution of Utah, provides:

The Legislature shall not authorize any game of chance, lottery or gift enterprise under any pretense or for any purpose.

Section 76–27–9, U.C.A.1953, provides:

A lottery is any scheme for the disposal or distribution of property by chance among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any scheme or any interest in such property, upon any agreement, understanding or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle or gift enterprise, or by whatever name the same may be known.

1. 73 Utah 599, 602, 603, 276 P. 292 (1929).

■ Thus, the statutory elements of a lottery are: (1) Prize; (2) chance; (3) any valuable consideration.[2]

In the instant action the elements of chance and prize are obvious but was there any valuable consideration? This element was discussed extensively in State ex rel. Schillberg v. Safeway Stores, Inc.;[3] this case is of great significance not only because of the similarity of Washington's constitutional and statutory provisions to those of this jurisdiction, but in Blair v. Lowham[4] this court followed the statutory interpretation of the court in State v. Danz.[5] In the Safeway case the issue was whether a game called "Bonus Bingo" was a lottery or merely an advertising device of a type widely employed in merchandising. As in the instant case, to participate in "Bonus Bingo" and to have a chance to win a prize, one received the slips and booklets free of charge without the necessity of making a purchase.

The court observed that the Constitution of Washington prohibited *any* lottery; and, therefore, it would survey closely any scheme or device which appeared even superficially to be a lottery and to apply the constitutional ban to all of them which in fact amounted to a lottery. The court cited State v. Danz and expressed a belief that it was controlling in Bonus Bingo, for as in Danz the fact that prizes were to be won would attract persons to Safeway and to its advertising.

The Washington court explained that the visit to the Safeway Store and a perusal of the promoter's advertising under the *Danz* rationale amounted to a consideration moving from player to promoter. The players wagered their time, attention, thought, energy and money spent in transportation to the store for a chance to win a prize—all of which constituted a valuable consideration moving from the players to the promoter.[6]

It is true that in some jurisdictions, it has been held that a lottery is a special kind of contract, which requires a special kind of consideration, such as money or its equivalent, which will impoverish the individual who parts with it.[7] However, in light of this state's constitutional mandate and legislative enactments pursuant there-

2. Blair v. Lowham, note 1, supra; State v. Danz, 140 Wash. 546, 250 P. 37, 48 A.L.R. 1109 (1926).

3. 75 Wash.2d 339, 450 P.2d 949 (1969).

4. Note 1, supra.

5. Note 2, supra.

6. Also see Lucky Calendar Co. v. Cohen, 19 N.J. 399, 117 A.2d 487 (1955); Mobil Oil Corporation v. Danforth (Mo.), 455 S.W.2d 505 (1970); Knox Industries Corp. v. State (Okl.), 258 P.2d 910 (1953); 29 A.L.R.2d, Anno: Gambling Law—Promotion Schemes, 88, Sec. 5, pp. 896–910.

7. Cudd v. Aschenbrenner, 233 Or. 272, 377 P.2d 150 (1962).

to, this court would be engaging in some type of sophistry to hold that there was consideration present to support a bargain but not to provide the element of consideration to constitute a lottery.

■ Since plaintiffs cannot establish their claim independent of a transaction prohibited by law, the courts cannot grant them relief. The judgment of the trial court is reversed, and this cause is remanded with an order to dismiss the action. No costs are awarded.

HENRIOD and TUCKETT, JJ., concur.

ELLETT, J., concurs in the result.

CROCKETT, Justice (dissenting, but concurring in result):

There are some persuasive reasons why I cannot agree to the disposition of this case on the ground stated in the main opinion.

The first is that the defense of illegality of the contract was not asserted nor relied on, nor in any manner raised or presented in the district court; nor in any manner raised, briefed or argued to this court. It is a well settled and well advised rule, which we should not depart from, that under such circumstances this court will not consider such a matter.[1] In fact in a very similar situation this court has but recently resolved such a dispute without dealing with the problem of illegality of the contract.[2]

The second is that, without so deciding here, it is at least questionable whether the giving away of such cards free for the asking, and the awarding of free prizes, constitutes a transaction so fraught with illegality and moral turpitude that a court should refuse to enforce it. However, assuming that this plan might be held to be illegal, there would arise this further problem: whether the person who created it and accepted full performance, could assert it as a defense against an innocent party who had fully performed. We have previously had occasion to comment on this subject in the case of McCormick v. Life Insurance Corp. of America.[3] We there stated that in determining whether such a contract should be enforced a number of factors should be considered in each individual case:

(a) The degree of criminality or evil involved; (b) the moral quality of the

1. That this court will not consider matters raised for the first time on appeal see Hamilton v. Salt Lake County Sew. Imp. Dist., 15 Utah 2d 216, 390 P.2d 235, and cases therein cited; also Evans v. Shand, 74 Utah 451, 280 P. 239; Thompson v. Ford Motor Co., 14 Utah 2d 334, 384 P.2d 109; Simpson v. Gen'l Motors, 24 Utah 2d 301, 470 P.2d 399.

2. See Walters v. National Beverages Inc., 18 Utah 2d 301, 422 P.2d 524.

3. 6 Utah 2d 170, 308 P.2d 949 ,(1957); citing Corbin on Contracts § 1534.

conduct of the parties; (c) comparison between them as to guilt or innocence; (d) the equities between them; and (e) the effect upon third parties or the public.

Reflection upon the foregoing in connection with other aspects of the problem will suggest that in all likelihood defendant choose not to assert nor rely upon the defense of illegality for its own good and sufficient reasons. An important one is that it having created and used the extensive and expensive plan of promotion and advertising, and held out the inducement to the plaintiff (and presumably many others) to accept the defendant's offer by performance, its own sense of fairness and good conscience would restrain it from asserting any wrong it may have itself committed as a basis for refusing to fulfill its promises to the public. With that thought I am in hearty accord. If it is to be assumed that the defendant is a wrongdoer, it seems to me discordant with principles of equity and justice to permit it to accept whatever benefits it may have obtained by inducing performance by innocent parties, and then repudiate its promise.[4] It is small wonder that the company never asserted nor relied upon such a defense which would in effect be saying: we are not only wrongdoers, but deceivers and defaulters.

It is unnecessary to establish bad precedents as to both of the propositions I have stated above. It has the potentially troublesome and unfair effect of deciding an important issue without giving the parties an opportunity to present evidence, or to argue and brief the matter, and without giving the trial court an opportunity to rule thereon. This seems particularly undesirable because there are so many advertising and promotion plans of this general character that such a ruling may have such far-reaching effects upon business and commerce.

Consequently I think it is greatly to be desired that the difficulties above referred to be avoided by adjudicating this case upon the issues framed by the pleadings and presented to the lower court, and as briefed and presented to this court on appeal. I therefore direct attention to the issue raised by the defendant: that there is no reasonable basis in the evidence to support the verdict and judgment. In preface thereto I reiterate support of the right of trial by jury as often approved by this court; and I do not believe what is said

---

4. Where the contract is not so inherently evil or immoral as to be malum in se and therefore against public policy, it seems to me that there is no valid reason why its creator should be permitted to urge its illegality. He should be estopped to do so. See Scott v. Apgar, 238 La. 29, 113 So.2d 457, see 17 C.J.S. Contracts § 280 p. 1212.

**458**

below departs therefrom. It is so well established as to be beyond question that a jury should be allowed a wide latitude of discretion in determining issues of fact upon which there is genuine dispute. Nevertheless, there should be no illusion that this allows jurors unbridled freedom to award damages against one person simply because another points a finger and so demands.[5] The performance of their duty must conform within the limitations of reason and justice, and within the rule of law. This requires that to justify recovery, there must be a basis in the evidence of at least some credibility, such that reasonable minds, acting fairly thereon could find facts upon which recovery could lawfully be predicated.

It is to be appreciated that neither trial courts in submitting issues to a jury, nor the jurors themselves, are infallible. That they sometimes make mistakes which need correcting is recognized in the rules of procedure which allow for the correction of such mistakes by the trial court by granting certain post-trial motions, or a new trial, or by this court on appeal. If

the verdict is outside the rule of law, or the jury has made a clear and patent mistake in its determination on a question of fact, it is both the prerogative and the duty of the court in the discharge of its responsibility as the supervisory authority in charge of the whole process of justice to correct such errors.

The plaintiff had to meet one simple and basic requirement: that she obtain, present and exhibit to the defendant cards upon which the required words, "Ride the Hot One," were "legible." There is no evidence whatsoever that when the cards in question were presented the word "hot" was legible. The contention is that the word had been on the two cards plaintiff presented, but that it had disappeared. It is thus plainly and indisputably shown by the evidence, including the exhibits, that the plaintiff failed to meet the requirement of the defendant's offer. Inasmuch as the verdict is inconsistent with the observable and incontrovertible facts, I am persuaded that this is a situation where it is necessary that the verdict and judgment be corrected. I therefore agree to the reversal.

5. See Seybold v. Union Pac. R.R. Co., 121 Utah 61, 239 P.2d 174, 177 (1951); see also Russell v. Watkins, 49 Utah 598, 164 P. 867, 869 (1917); and see statement in Stickle v. Union Pac. R.R. Co., 122 Utah 477, 251 P.2d 867, 870 (1952).