RAY HARRIS, Plaintiff, and B.W. HARRIS, INC., Appellant, v
ECONOMIC OPPORTUNITY COMMISSION OF NASSAU COUNTY,
INC., Respondent.

Second Department, October 28, 1991

APPEARANCES OF COUNSEL

*Deutsch, Klagsbrun & Blasband (Joseph Calderon* of counsel), for appellant.

*Daniel Mandel (Norman Bard* of counsel), for respondent.

### OPINION OF THE COURT

MILLER, J.

■ The question before us on this appeal, while seemingly innocuous at first blush, severely impacts upon a fundraising practice widely utilized by charitable organizations. Simply stated, we are called upon to determine whether a charitable organization may interpose the defense of illegality to defeat the claim by the winner of a raffle who was denied his winning prize. For the reasons that follow, we are constrained to hold that such a raffle constitutes an illegal contract in violation of General Obligations Law § 5-417 and, hence, the defendant charitable organization is not compelled to award the winning prize or the value thereof.

The facts underlying this appeal are not in substantial dispute. The defendant Economic Opportunity Commission of Nassau County, Inc. (hereinafter the EOC) is a charitable organization which provides various services to needy citizens in Nassau County. Among those services is the Martin Luther King Scholarship Fund, a privately funded endeavor which provides educational aid for qualified area students. In 1986 the EOC conducted a charitable raffle to raise money for this scholarship fund.

The plaintiff Ray Harris, vice-president of the appellant corporation B.W. Harris, Inc., operated a pharmacy in West Hempstead. In May 1986 a man whom Mr. Harris recognized as a customer, entered the pharmacy to sell raffle tickets on behalf of the EOC to raise money for the Martin Luther King Scholarship Fund. Mr. Harris, recognizing an opportunity to enhance the good will of his business, purchased five raffle tickets at a cost of $2 each. Rather than write out his name and address on each of the tickets, Mr. Harris used a rubber stamp identifying the corporation as the purchaser of the tickets. The seller of the tickets left the store, thanking Mr. Harris for his "contribution". The prize being raffled was a 1986 Chevrolet Camaro.

At the very time Mr. Harris purchased the raffle tickets, he was negotiating the sale of the corporation's pharmacy. After concluding those negotiations, he began a vacation. During his absence, on June 7, 1986, the EOC held its drawing. One of the tickets purchased by Mr. Harris on behalf of the corporation was selected as the winner of the automobile.

The one area in which the factual allegations of the parties were in significant dispute concerned the time frame in which Mr. Harris allegedly claimed his prize. It is conceded by all that the drawing on the raffle occurred on June 7, 1986. Mr. Harris testified that he was on vacation at that time, but he returned during the second week of June and was informed by the pharmacist who had purchased the business that EOC representatives had visited the pharmacy to inform him of his good fortune. Mr. Harris claimed that he called the EOC on June 8 or 9, 1986, to claim his prize. He claimed he was given a "run-around" until he finally spoke with the chief executive officer of the EOC John Kearse, who asked him to come to the EOC offices for a meeting the following Saturday. At that meeting, which Mr. Harris estimated occurred on June 11, 1986, Mr. Kearse reportedly told him that the EOC had attempted to award his prize, but, because of his absence following the drawing, the prize had been withdrawn. In lieu thereof, Mr. Kearse reportedly offered a letter to Mr. Harris which would entitle him to a tax deduction for the value of the car. Mr. Harris rejected this offer.

In stark contrast, John Kearse testified that following the raffle drawing on June 7, he and another EOC representative visited the pharmacy on June 10, 1986, to award the car. On that date they met Craig Niederberger, the pharmacist who

had purchased the business, and Mr. Niederberger informed them that Mr. Harris was unavailable and that his whereabouts were unknown. Mr. Kearse left his business card with Mr. Niederberger and the latter agreed to convey the good news to Mr. Harris. Mr. Kearse further testified that he did not hear from Mr. Harris until some time in early August 1986. By that time, however, to take advantage of a limited refund offer, the EOC had returned the car to the dealer from which it was purchased. The refund that was obtained was added to the scholarship fund.

The only documentary evidence concerning the actual sequence of events was a letter from Mr. Kearse dated June 17, 1986, memorializing his June 10, 1986 visit to the pharmacy. Mr. Kearse testified that at the time he sent this letter, the car was still available for delivery. Mr. Harris, however, insinuated that the letter was written after the return of the car in June 1986 in anticipation of litigation. Curiously, no documentation was presented as to when the car was returned to the dealer, information presumably available to the defendant.

In any event, this action was commenced on or about August 26, 1986, and was tried in the District Court of Nassau County, First District. Rejecting the defendant's argument that the raffle of the car was an illegal lottery, the court submitted the case to the jury, which returned a verdict in the plaintiffs' favor in the amount of $15,000. On appeal to the Appellate Term, however, the award to Ray Harris was stricken, and the award to the appellant was reduced to $20 representing twice the cost of the wager, on the ground that the raffle was illegal and hence void *(Harris v Economic Opportunity Commn.,* 142 Misc 2d 980). We affirm.

As a logical starting point for our discussion, NY Constitution, article I, § 9 provides in pertinent part: "no lottery or the sale of lottery tickets, pool-selling, bookmaking, or any other kind of gambling [except as otherwise provided herein] shall hereafter be authorized or allowed within this state; and the legislature shall pass appropriate laws to prevent offenses against any of the provisions of this section". The exceptions to the foregoing authorize State-operated lotteries, parimutuel wagering on horse races, and certain specified games of chance, which, *inter alia,* under the auspices of local governments, are run by charitable organizations and which, unless otherwise provided by law, offer individual prizes which do not exceed $250 and aggregate prizes which do not exceed $1,000

(NY Const, art I, § 9 [2]). It is uncontroverted that the raffle of a new automobile in the case at bar does not fall within the above constitutional exceptions to the prohibitions against illegal gambling.

Among the "appropriate laws" enacted by the Legislature in furtherance of the constitutional prohibition against gambling is Penal Law article 225, which supplies the definitions of proscribed gambling activities. Penal Law § 225.00 (2) provides: "[a] person engages in gambling when he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome". It has been held that three elements cause an event to constitute an unlawful game of chance, or lottery, to wit, consideration, chance, and a prize (see, People v Cadle, 202 Misc 415; People v Williams, 202 Misc 420; Carl Co. v Lennon, 86 Misc 255).

Furthermore, Penal Law § 225.00 (10) defines a lottery as: "an unlawful gambling scheme in which (a) the players pay or agree to pay something of value for chances, represented and differentiated by numbers or by combinations of numbers or by some other media, one or more of which chances are to be designated the winning ones; and (b) the winning chances are to be determined by a drawing or by some other method based upon the element of chance; and (c) the holders of the winning chances are to receive something of value". "Unlawful" means anything "not specifically authorized by law" (Penal Law § 225.00 [12]). Clearly, the instant raffle in which a "contribution" of $10 purchased five chances to win an automobile constitutes a lottery proscribed by the Penal Law.

Throughout the course of this action, the appellant has taken the position that Mr. Harris did not wager $10 on five chances to win a car, but rather that he made a donation or charitable contribution in this amount to the EOC in return for which he was permitted to enter a raffle, run by a benevolent organization, seeking to raise funds for a worthy cause. Characterization of the EOC's motivations aside, the appellant asserts that a mere "donation" having been made, the entry in the raffle was incidental thereto and no illegal wager was made for consideration. The appellant thus seeks to bring this case within what it claims is the rule of Johnson v New York Daily News (97 AD2d 458, affd 61 NY2d 839), which, it asserts, stands for the proposition that a contest winner may sue to recover the value of the winning prize. The appellant's

reliance thereon, however, is misplaced, as the facts of that case have no application to the matter presently before us.

The issue before the court in the *Johnson* case *(supra)* was not whether the contest was illegal. In *Johnson,* the issue to be decided was whether or not the plaintiff, who had entered a newspaper promotional contest by submitting the name of her 14-year-old grandson, had violated contest rules which, *inter alia,* provided that the contest was open to persons 18 years of age and older. The court held that the contest rule had been violated, and that the Daily News was not obligated to award the prize to the plaintiff. The issue of the legality or illegality of the contest was not raised before the court in that case and thus the opinion therein provides no authority for the plaintiffs' present argument, as " ' "opinions must be read in the setting of the particular cases and as the product of preoccupation with their special facts" ' " *(see, e.g., Matter of Curcio v Boyle,* 147 AD2d 194, 197, quoting from *Danann Realty Corp. v Harris,* 5 NY2d 317, 322).

Moreover, as Appellate Term correctly noted, *Johnson (supra)* is factually distinguishable, as the rules governing the contest in that case expressly provided that no purchase was necessary to enter and that manually reproduced game cards could be submitted to the Daily News in lieu of official game cards available in copies of the newspaper. Indeed, copies of the newspaper were available at libraries and no rule prohibited contestants from entering the contest by utilizing the game form in a borrowed or discarded copy of the newspaper. Thus, there is plainly no merit to the appellant's unsubstantiated allegation that consideration in the form of a purchase of the newspaper was necessary to enter that contest. More significantly, the record before us is devoid of any evidence to suggest that the EOC would have permitted entrants to join its fundraising raffle without paying for their tickets. Thus, there being no consideration necessary to enter the Daily News contest, the game therein was not an illegal lottery *(see also, People v Shafer,* 160 Misc 174, *affd* 273 NY 475) and the rule of that case has no application to this case. In juxtaposition, the facts of this case lead to the inescapable conclusion that the appellant purchased chances, for valuable consideration, to participate in a contest which, pursuant to Penal Law § 225.00 (10), constituted an illegal lottery.

■ Having determined that the raffle in this case constitutes an unlawful gambling scheme, we note that General Obligations Law § 5-417 provides: "All contracts, agreements and

securities given, made or executed, for or on account of any raffle, or distribution of money, goods or things in action, for the payment of any money, or other valuable thing, in consideration of a chance in such raffle or distribution, or for the delivery of any money, goods or things in action, so raffled for, or agreed to be distributed as aforesaid, shall be utterly void". It is clear, pursuant to the plain meaning of this statute, that the parties agreed to participate in an unlawful raffle and that that agreement is void and unenforceable. "All contracts and dealings in respect to lotteries, and tickets in lotteries, being illegal, no right of action can accrue to a party, by reason of such contracts and dealings" *(Thatcher v Morris,* 11 NY 437, 438; *Holberg v Westchester Racing Assn.,* 184 Misc 581; *Moskowitz v Cohen,* 158 Misc 489).

This result is in accord with the law of this and other States as well as it is a widely held principal of common law that a party to an illegal contract may not obtain the aid of a court of law to further its illegal objectives *(see, Stone v Freeman,* 298 NY 268). Thus, in *Cotto v Martinez* (26 Conn Supp 232, 217 A2d 416) the Connecticut Court of Common Pleas denied recovery to a plaintiff who sought enforcement of an agreement found to constitute an illegal lottery. Similarly, in *Williams v Weber Mesa Ditch Extension Co.* (572 P2d 412 [Wyo]) a plaintiff was denied recovery on a lottery conducted by a nonprofit corporation which voided its first drawing after additional raffles tickets were belatedly received and then conducted a second drawing. The court reasoned that even in the absence of a statute, as a matter of public policy a gambling debt is unenforceable in the courts *(see also, Geis v Continental Oil Co.,* 29 Utah 2d 452, 511 P2d 725; *Chenard v Marcel Motors,* 387 A2d 596 [Me]; *Davis v Fleshman,* 245 Pa 224, 91 A 489; *Sumner v Union Trust Co.,* 116 Ind App 684, 66 NE2d 621). So, too, as the Legislature of this State has expressed in various enactments *(see, Straus & Co. v Canadian Pac. Ry. Co.,* 254 NY 407), the public policy of New York precludes recovery on an illegal gambling contract. Rather, by express legislative fiat, the appellant herein is limited to recovering double the value of the wager plus double the costs of the suit (General Obligations Law § 5-423).

The defendant acknowledges that its invocation of the defense of illegality poses a threat to its future ability to conduct raffles to raise funds, and that a similar predicament will befall other charitable institutions. It is clearly not unreasonable to assume that the knowledge that an organization may,

with impunity, refuse to award a prize to its contest winner, will have a chilling effect upon future solicitations of this nature. Accordingly, the defendant asks this court to take this opportunity to urge the Legislature to amend the laws of this State to legalize charitable raffles such as the one at bar.

We are constrained, as a court of law, to decide this case in accordance with the law, although it negates the appellant's good fortune and may cause a chilling effect upon worthwhile and critical charitable fundraising. Therefore, we accept the defendant's invitation, as the legalization of such charitable raffles would appear to constitute a winning proposition for all concerned.

To begin with, it appears that the prohibition against illegal charitable raffles is one which is more honored in the breach than in the observance. Indeed, although raffles are apparently quite prevalent as a means of fundraising in this area, few people appear to be aware that they are illegal. At least one District Attorney has gone on record acknowledging his reluctance to prosecute legitimate charities conducting necessary fundraising (see, *Illegal Raffles are Many Groups' Ticket to Funds,* Reporter Dispatch, July 30, 1991, at 1, col 1). Thus, the benefits of such raffles are apparently well recognized. Indeed, as it stands now, the Legislature has determined that charitable fundraising through games of chance is in the public interest (General Muncipal Law § 185) yet only limited types of charitable games of chance are sanctioned (see generally, General Municipal Law arts 9-A, 14-H) with prize limits of $300 per single prize (General Municipal Law § 189 [5]) and with an aggregate prize value limit of $1,000 per event (General Municipal Law § 189 [6]). Nevertheless, given the existence of this express legislative intent favoring charitable fundraising through games of chance, there appears to be little reason not to extend the exemption to the prohibition against illegal gambling enjoyed by "lower stakes" charitable gambling to games of chance such as the one at bar.

Virtually every day charitable and nonprofit institutions conduct raffles to finance their essential services. While some of these groups may themselves prefer to continue their fundraising activities without local governmental regulation, the law is clear: charitable raffles entered for consideration are illegal gambling contracts, void under the law. Surely some compromise can be achieved to legalize these essential and beneficial fundraising activities without subjecting their sponsors to overly burdensome governmental regulation. A

spin of a wheel of chance need not unravel a roll of bureaucratic red tape!

In sum, while we do not presume to dictate a specific course of action for a coequal branch of government to follow, we nevertheless accept the defendant's invitation to point out to the Legislature that the law should be brought in line with the current state of affairs. Charitable and nonprofit organizations should no longer be forced to conduct their worthy fundraising activities outside of the law. Under the auspices of local governments administrating fundraising activities in a manner similar to that sanctioned by General Municipal Law article 9-A, there seems to be little reason to resist the legalization of charitable raffles. By so doing, the defense of illegality may never again be interposed to deprive a rightful winner of the prize to which he or she is entitled. More importantly, however, a profitable and tacitly approved form of charitable fundraising will receive an official stamp of approval, consistent with the express public policy of this State, so that its beneficent results will no longer run afoul of the law.

KOOPER, J. P., SULLIVAN and O'BRIEN, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, without costs or disbursements.