STATE v. MONTELLO SALT CO.

No. 1858. Decided November 27, 1908 (98 Pac. 549).

1. PUBLIC LANDS—UNIVERSITY LANDS—SALINE LANDS—GRANT TO STATE—STATUTE—CONSTRUCTION — "AND" — "INCLUDING." Enabling Act Utah (Act Cong., July 16, 1894, c. 138, 28 Stat. 109) sec. 8, granted to the state public lands to the extent of two townships to be reserved for the state university, and in addition 110,000 acres to be selected and located as provided, and "including" all the saline lands in said state, for the use of the university. *Held*, the word "and" before "including" was used to express the relation of addition, and the word "including" was used in the sense of "also," so that the state was

entitled to all the saline land, without selection, in addition to the 110,000 acres to be selected and located.

2. WORDS AND PHRASES—"INCLUDING." The word "including," according to common usage, is susceptible of different shades of meaning. It may be used in the sense to comprise or embrace; to confine or to contain; to express the idea that a thing in question constitutes a part only of the contents of some other thing; as a word of enlargement, and ordinarily implying that something else has been given beyond the general language which precedes it; to add to the general clause a species which does not naturally belong to it. It is frequently used as the equivalent of "also."

3. STATUTES—CONSTRUCTION. The intention of the Legislature must be determined from the language actually used, interpreting it according to its fair and obvious meaning.

4. PUBLIC LANDS—UNIVERSITY LANDS—SALINE LANDS—GRANT TO STATE—CONSTRUCTION. Where, in an act granting saline lands to a state for the use of the state university, Congress has expressed its intention as to the extent of the grant with certainty, that intention is not to be departed from on any extraneous consideration or theory of construction, and similar grants to other states need not be considered as evidencing a policy on the subject, nor need provisions in committee reports on the bill making the grant be inquired into.

APPEAL from District Court, Third District; Geo. G. Armstrong, Judge.

Action by the State against the Montello Salt Company. Judgment for plaintiff, and defendant appeals.

AFFIRMED.

*Maginnis & Corn* for appellant.

*M. A. Breeden,* Atty. Gen., *A. R. Barnes,* Asst. Atty. Gen., and *W. D. Riter* for the State.

STRAUP, J.

It is alleged in the complaint that the plaintiff, the state of Utah, is the owner in fee and entitled to the possession of certain lands (fully described) situate in Tooele county, state of Utah; that the lands are saline lands, and were granted to the plaintiff by the government of the United States under the provisions of section 8 of the enabling act (Act July 16,

1894, c. 138, 28 Stat. 109), enabling the territory of Utah to enter the Union as a state; and that the defendant has wrongfully entered upon these lands, and has threatened to and will, unless restrained, remove therefrom valuable deposits of salt, to the irreparable damage of plaintiff. Judgment was demanded that the plaintiff be decreed the owner of and entitled to the possession of the lands, and that the defendant be restrained from entering upon them or from removing salt or other deposits therefrom. The defendant answered admitting that the lands are valuable only for the saline deposits found upon them, and alleging that underneath the soil the lands are covered with a deposit of salt varying from four to eight feet in thickness; that at the time of the approval of the enabling act the lands were so covered with soil and other earthy substances as to conceal their true character, and their real character was not discovered until November, 1906; that the plaintiff had selected and located and received grants to the full amount of the 110,000 acres of lands granted it under section 8 of the enabling act for university purposes; that the lands in question were not included in the selection or location so made by the state of Utah; that the legal title of the lands in question was in the government of the United Sates; and that the defendant was the equitable owner and entitled to the possession thereof by virtue of locations made by its grantors as saline lands under the placer laws of the United States. The court sustained plaintiff's demurrer to the answer. The defendant declined to further answer or plead. Judgment was therefore entered in favor of the plaintiff as prayed for in the complaint, from which the defendant has prosecuted this appeal.

Counsel for both parties assert that the controversy arises over, and the determination of the question wholly depends upon, the construction to be given section 8 of the enabling act. The section is as follows:

"That lands to the extent of two townships in quantity, author-ized by the third section of the act of February twenty-one, eighteen hundred and fifty-five, to be reserved for the establishment of the University of Utah, are hereby granted to the state of Utah for university purposes, to be held and used in accordance with the provisions of this section; and any portion of said lands that may not have been selected by said territory may be selected by said state. That in addition to the above, one hundred and ten thousand acres of land, to be selected and located as provided in the foregoing section of this act, and including all the saline lands in said state, are hereby granted to said state, for the use of said university, and two hundred thousand acres for the use of an agricultural col-lege therein. That the proceeds of the sale of said lands, or any portion thereof, shall constitute permanent funds, to be safely in-vested and held by said state, and the income thereof to be used exclusively for the purposes of such university and agricultural col-lege, respectively.'"

The essential difference between the parties as to the mean-ing to be given this section arises over the clause, "that in ad-dition to the above, one hundred and ten thousand acres of land to be selected and located as provided in the foregoing section of this act, and including all saline lands in said state." The appellant contends that the additional lands granted in that clause for the use of the university are only 110,000 acres of lands, and that whatever saline lands are claimed by the state must be selected and located by it and embraced within the 110,000 acres of lands, and that, inas-much as the state had already selected and located 110,000 acres of lands for the use of the university, it is not entitled to the saline lands in question because they were not selected and not embraced within the 110,000 acres of lands which had been selected and located by the state for the use of the university. On the other hand, the state contends that the additional lands, granted in the clause for the use of the uni-versity are 110,000 acres to be selected and located by it, and, in addition thereto, all the saline lands in the state, and, inasmuch as all the saline lands were granted to it, no selec-tion or location of them was necessary.

It may be said at the outset that the grant

"Should be neither enlarged by ingenious meaning, nor diminished
by strained construction. The interpretation must be reasonable,
and such as will give effect to the intention of Congress. This
is to be ascertained from the terms employed, the situation of the
parties, and the nature of the grant. If these terms are plain and
unambiguous, there can be no difficulty in enforcing them; but if
they admit of different meanings—one of extension and the other
of limitation—they must be accepted in a sense favorable to the
grantor, and, if rights claimed under the government be set up
against it, they must be so clearly defined that there can be no
question of the purpose of Congress to confer them. In other words,
what is not given expressly, or by necessary implication, is with-
held." (*Leavenworth, etc., R. R. v. U. S.*, 92 U. S. 740, 23 L. Ed.
634.)

In section 12 of the enabling act, it is also provided that
"the said state of Utah shall not be entitled to any further or
other grants of land for any purpose than is expressly pro-
vided in this act," etc. Conceding therefore that the state is
entitled to only such lands as have been expressly granted to
it, nevertheless the enabling act is "to be considered sensibly,
and with a view to the object aimed at by the Legislature."
*Gibson v. Jenney,* 15 Mass. 205. In determining the question
the chief purpose is to ascertain the intention of Congress. Its
intention is found "in the language actually used, inter-
preted according to its fair and obvious meaning." *U. S. v.
Harris,* 177 U. S. 305, 20 Sup. Ct. 609, 44 L. Ed. 780. If
the language employed is ambiguous, and if from the situation
of the parties and the nature of the grant it is uncertain
whether saline lands were or were not included within the
110,000 acres of lands, "the special rule of construction ap-
plicable to statutes making such grants would compel a
construction favorable to the grantor." (*Barden v. N. P. R.
R.,* 154 U. S. 321, 14 Sup. Ct. 1030, 38 L. Ed. 992.) From
a reading of the statute it appears that lands were granted
to the extent of two townships, authorized by the act of
1855. In addition thereto, there were also granted "one
hundred and ten thousand acres of lands to be selected and
located as provided in the foregoing section of this act, and
including all saline lands in said state."

The question now is, and the thing which counsel assert divides them is: What meaning shall be given the words "and" and "including" found in that clause? The appellant contends that "the word 'and,' just preceding the word 'including,' must, as we take it, be stricken out as meaningless and serving only to obscure the meaning." It is then, in effect, urged that by disregarding the word "and," and by treating the word "including" as a word of limitation, or regarding it as expressing the idea that the thing in question constitutes a part only of the contents of some other thing, the clause must be read to mean that the saline lands are embraced within the 110,000 acres. Were we at liberty to wholly disregard the word "and," and were we further at liberty to transpose the words in the clause as do counsel, so as to make the clause read that a further or additional grant of "one hundred and ten thousand acres of lands including all saline lands in said state, to be selected and located, etc., are hereby granted," there would be some force to appellant's position; but we do not feel that we are at liberty to do either. It is an elementary rule of construction that effect must be given, if possible, to every word, clause, and sentence of a statute. By giving effect to the word "and" does not render the clause in which it occurs unintelligible nor lead to an absurdity. We therefore are not at liberty to reject it. Nor is the word generally regarded of a flexible character, or of a dubious or varied meaning, permitting it to be enlarged or restricted, or to be greatly varied, in order to give effect to the fundamental purpose of a statute, and to carry out the intent of the law-making body. According to the common and approved usage of language, the word "and" expresses the relation of addition. We think it was used in such sense in the clause in question. The word "including" is susceptible of different shades of meaning. Common usage has given it different meanings. It may be used in the sense to comprise or embrace, as this volume includes all his works (Standard Dictionary); to confine or to contain, as the shell of a nut includes the kernel (Webster's Dictionary); to express the

idea that a thing in question constitutes a part only of the contents of some other thing (*Dumas v. Boulin,* McGloin [La.] 275); as a word of enlargement, and in ordinary signification implying that something else has been given beyond the general language which precedes it (*In re Goetz,* 71 App. Div. 272, 75 N. Y. Supp. 750); to add to the general clause a species which does not naturally belong to it (*Hiller v. U. S.,* 106 Fed. 73, 45 C. C. A. 229); and as the equivalent of "also," a sense in which it is frequently employed in tariff acts (*U. S. v. Pierce,* 147 Fed. 199, 77 C. C. A. 425). We think the word "including" was here used as a word of enlargement, to add to, or as the equivalent of "also," and, as so used, implies that something else has been given beyond the general language which precedes it. So regarding these words, in the clause in which they are found, is but giving them their ordinary and popular meaning, and is placing a construction upon them as construed and understood according to the common and approved usage of language. When so construed, and understood, it is very clear that by the clause in question Congress intended to grant something in addition to the 110,000 acres of lands for the use of the university, which is plainly expressed to be all the saline lands in the state.

Appellant has referred us to enabling acts of other states (Ohio, Missouri, Michigan, Illinois, Alabama, Mississippi, and Arkansas), wherein only a definite number of salt springs or a definite quantity of saline lands was granted to the state, as evidencing a policy not to grant all, but only a portion, of the salt springs or saline lands to the state. Respondent has referred us to the enabling acts of North and South Dakota, Montana, Oregon, and Wyoming, wherein it was expressly provided that the lands granted were "in lieu of any grant of saline lands granted to said state," and has especially referred us to land grants made to the territory of New Mexico, four years after the approval of the Utah enabling act, wherein there was granted to the territory of New Mexico, for university purposes, in addition to lands to the extent of two townships in quantity,

"65,000 acres of nonmineral, unappropriated and unoccupied land, to be selected and located as hereinafter provided, together with all saline lands in said territory." These are matters worthy of but little consideration. It was entirely optional with Congress to grant Missouri twelve salt springs, or a less or a greater number; New Mexico or Utah all, or only a part of the saline lands, within their respective boundaries. The fact that Congress granted to Missouri only a part of the salt springs within its territory, and to New Mexico all the saline lands found within its territory, can throw no light upon the meaning of the language employed in the Utah enabling act granting certain lands to it.

We are also referred to the majority and minority reports on the bill providing for the admission of the territory of Utah as a state. Section 8 of the majority report is as it now appears in the statute. A part of section 8 of the minority report is: "And that there be further appropriated one hundred and ten thousand acres of lands for the support of a university, said one hundred and ten thousand acres of land to include saline lands to an amount not to exceed three thousand acres." From this it is argued that one of the questions before Congress was whether the grant of saline lands should be a part of and should be included in the grant of 110,000 acres of lands, or whether the grant of saline lands should be excluded therefrom; that since the minority report in express terms included a grant of saline lands (to the extent of 3,000 acres), and expressly provided that it should be a part of the 110,000 acres of lands, and since the majority report provided for a grant of 110,000 acres of lands, "and including all saline lands in said state," Congress, by the rejection of the minority report, and by the adoption of the majority report, evidenced an intention to grant 110,000 acres of lands, and also all saline lands in the state. We do not find it necessary to inquire into or consider these reports. The object of all interpretation of a statute is to determine what intention is conveyed by the language employed. If Congress has expressed its inten-

34 Utah—30

tion, in the law itself, with certainty, it is not admissible to depart from that intention on any extraneous consideration or theory of construction. The sense in which the words were intended to be used can be clearly ascertained from their context and the statute itself. We think the language employed clearly and distinctly expresses the congressional intent, and that the statute is free from ambiguity and doubt. There is therefore no occasion to resort to other means of interpretation.

We are of the opinion that the judgment of the court below ought to be affirmed, with costs.

It is so ordered.

McCARTY, C. J., and FRICK, J., concur.