45599.  TIERCE v. THE STATE.

Argued September 16, 1970—Decided November 2, 1970—
Rehearing denied November 18, 1970—

846

*James B. Langford, Matthews, Maddox, Walton & Smith, Charles D. Flinn, Jr.,* for appellant.

*David N. Vaughan, Jr., District Attorney, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, William L. Harper, James B. Talley, Assistant Attorneys General,* for appellee.

HALL, Presiding Judge. Prior to the new Criminal Code, the operation of a lottery was declared a crime under Georgia penal statutes, but the definition of a lottery was found only in the decisions of our appellate courts. The necessary elements were held to be prize, chance and consideration. In determining whether sales promotion schemes constituted a lottery, the key question in practically all the cases has been that of consideration.

The new Criminal Code added the following definition: "A lottery is any scheme or procedure whereby one or more prizes are distributed by chance among persons who have paid or promised consideration for a chance to win such prize, whether such scheme or procedure is called a pool, lottery, raffle, gift, gift enterprise, sale, or policy game, or by some other name." *Code Ann.* § 26-2701 (d).

Appellant contends the language of the new definition requires that the question of consideration is to be determined not from the standpoint of the lottery operator (e.g. benefits flowing to it in the nature of increased business from the scheme) but from the standpoint of the holders of the tickets, cards, etc. (pecuniary detriment to them flowing to the operator). Appellant says the question to be asked is: did the holder of the prize tickets pay a valuable consideration for the chance? He further contends the answer here is "no" because there was no charge or obligation to purchase imposed upon the holders of the cards.

Several States with a similar statutory definition of lottery have construed the language to require the point of determination to be that of the ticket holder. We do not reject this as a general proposition, but only the results reached by our sister States when they applied it to a flexible participation gift enterprise such as we have here.

While some earlier Georgia cases may have used language that *seemed* to determine the question of consideration from the standpoint of the operator, this court, in a comprehensive opinion written in 1967, clearly looked for consideration from the standpoint of the ticket holders in a gift enterprise and found it present. "Consideration as an ingredient of a prohibited lottery or gift enterprise is shown when there is present, in the actual working of the sales promotion scheme, a class of persons who, in addition to receiving or being entitled to chances on prizes, supply consideration for all the chances in bulk by purchasing whatever the promoter is selling, whether the purchasers were required to do so or not under the wording of the promoter's rules." *Boyd v. Piggly Wiggly Southern,* 115 Ga. App. 628 (3) (155 SE2d 630).

The new Criminal Code definition is not inconsistent with the *Boyd* test. Both require that among those persons who receive a chance to win a prize there must be *some* who have paid a consideration (made a purchase at the store). We do not believe the legislature intended to drastically change the test to require *all* participants to have paid a consideration in order to have a lottery or similar scheme. In the Foreword of the new Criminal Code, the Study Committee states: ". . . it was a fundamental rule of the committee to retain as many laws as possible, with the interpretations of the courts carefully considered. The form and arrangement might be changed to meet modern conditions, the words may be changed for the sake of uniformity, but the substance was retained wherever possible . . ." Further, the definition itself specifically includes a scheme known as a "gift enterprise." These supermarket sales promotional devices have been typically classified as gift enterprises by the Georgia courts. *Boyd,* supra; *Winn-Dixie Stores, Inc. v. Boatright,* 115 Ga. App. 645 (155 SE2d 642).

The trial court did not err in finding defendant guilty of violating *Code Ann.* § 26-2703 (f).

*Judgment affirmed. Deen, J., concurs. Evans, J., concurs specially. Deen, J., also concurs in the special concurrence.*

EVANS, Judge, concurring specially. I concur in the judgment of affirmance but feel obliged to add my reasons therefor. Counsel admitted by the "Stipulation of the Case" that on February 28, 1970, the Piggly-Wiggly Supermarket of which Billy Tierce, the defendant, was general manager, did operate "a sales promotional program known as 'Piggly-Wiggly of Calhoun Jackpot.'" A jackpot card had been mailed to every person listed in the Calhoun City Directory. Any adult person who did not receive a jackpot card could participate in the program by registering with the Piggly-Wiggly Supermarket for a jackpot card. In order to be eligible for the jackpot prize the holder was required to have his card punched in the Piggly-Wiggly Supermarket during the week of the drawing.

As was held in *Boyd v. Piggly-Wiggly Southern,* 115 Ga. App. 628 (3) (155 SE2d 630): "Consideration as an ingredient of a prohibited lottery or gift enterprise is shown when there is present, in the actual working of the sales promotion scheme, a class of persons who, in addition to receiving or being entitled to chances on prizes, supply consideration for all the chances in bulk by purchasing whatever the promoter is selling, whether the purchasers were required to do so or not under the wording of the promoter's rules."

In other words, if any person in Calhoun, Georgia, who had received a card (and that included every person in the City Directory of Calhoun) made any purchase, no matter how small, at Piggly-Wiggly Supermarket in Calhoun during the week of the drawing, then that furnished a consideration as to each and every person who had a card.

It is true that the "Stipulation of Facts" does not specifically set forth a statement to the effect that goods were sold by the defendant to one of the persons holding a card during the week of the drawing, but such was not necessary. Each and every fact essential to a conviction in a criminal case does not have to be proven by a witness. *Code* § 38-102 provides in pertinent part: "Presumptive evidence consists of inferences drawn by human experiences from the connection of cause and effect, and observations of human conduct."

This statute is often referred to by lawyers in arguments to juries as the "common sense rule." It is the silent witness that goes into each and every jury room with the twelve men who are to decide the case. Piggly-Wiggly was running a supermarket for the sole purpose of selling goods to the public. To whom did it sell? To the people of Calhoun where it was located. What people are located in Calhoun? Those who are listed in the City Directory, all of whom received a card from Piggly-Wiggly. We may presume that one hundred percent of the people in Calhoun received a card. Can it be imagined that at the end of the week, when it came time to give away a jackpot of not less than $100, not a single resident of Calhoun, Georgia, had purchased one penny's worth of goods from the Piggly-Wiggly Supermarket—and yet these people came forward with their punched cards, having visited the supermarket during the week to have their cards punched? Would Piggly-Wiggly Supermarket have conducted a drawing to give away $100 to the lucky card-holder of this group of non-buying people? Hardly! If it did so, when the second week came around, Piggly-Wiggly would be out of business because under the "presumptive evidence" rule as set forth in *Code* § 38- 102, we can presume that if Piggly-Wiggly Supermarket of Calhoun did not sell goods to the people of Calhoun it did not sell them to anybody. Therefore, I feel that the evidence was sufficient to authorize conviction, and I would affirm the lower court.