THE KROGER CO., APPELLANT, *v.* COOK, DIR., DEPT. OF LIQUOR CONTROL, APPELLEE.

[Cite as Kroger Co. v. Cook (1970), 24 Ohio St. 2d 170.]

(No. 69-64—Decided December 30, 1970.)

172

*Messrs. Porter, Stanley, Treffinger & Platt, Mr. Lawrence D. Stanley* and *Mr. James J. Hughes, Jr.,* for appellant.

*Mr. Paul W. Brown,* attorney general, and *Mr. James E. Rattan,* for appellee.

ABELE, J. The initial question presented is the power of the General Assembly to regulate the traffic in intoxicating liquor, and, specifically, the power of the Liquor Control Commission to regulate permit premises to the extent of forbidding the operation of a game of chance or contrivance on permit premises.

Statutory authority for the making of rules and regulations by the commission is supplied by R. C. 4301.03. Subsection (B) of that section provides that such rules and regulations may include:

"Rules, regulations, and orders providing in detail for the conduct of any retail business authorized under permits issued pursuant to such chapters [4301 and 4303], with a view to insuring compliance with such chapters and laws relative thereto, and the maintenance of public decency, sobriety, and good order in any place licensed under such permits * * *."

Ohio courts have held that, within constitutional limits, the General Assembly may, in the exercise of police powers, limit or restrict, by regulatory measures, the traffic in intoxicating liquor. *State, ex rel. Zugravu,* v. *O'Brien* (1935), 130 Ohio St. 23; *Neil House Hotel Co.* v. *Columbus* (1944), 144 Ohio St. 248; *Abraham* v. *Fioramonte* (1952), 158 Ohio St. 213; *Solomon* v. *Liquor Control Comm.* (1965), 4 Ohio St. 2d 31.

Ohio courts have also upheld the authority of the Liquor Control Commission to adopt subordinate rules and regulations to carry out the policy provisions provided by statute. *Coady* v. *Leonard* (1937), 132 Ohio St. 329 (advertising of beer and intoxicating liquor) ; *Pompei Win-*

**174**

*ery* v. *Board of Liquor Control* (1957), 167 Ohio St. 61 (fixing minimum prices); *International Breweries* v. *Crouch* (1963), 118 Ohio App. 202 (premium or gift merchandising).

We hold that, under R. C. 4301.03(B), the commission had authority to adopt Regulation 53, Section II, the focal point in this case, which reads as follows:

"No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder any device, machine, apparatus, book, record, forms, tickets, papers or charts which may or can be used for gaming or wagering or the recording of wagers, pools or chances on the result of any contest, or allow or conduct gaming or wagering on such premises on any game of skill or chance. * * *"

We hold that Regulation 53, Section II, is within the powers granted the commission by R. C. 4301.03(B), and is a reasonable exercise thereof.

The final question is whether appellant's games are violative of the "gaming" and "scheme of chance" provisions of Regulation 53, Section II.

In paragraph five of the syllabus of *Westerhaus Co.* v. *Cincinnati* (1956), 165 Ohio St. 327, this court held that "in general, the elements of gambling are payment of a *price* for a *chance* to gain a *prize*." See, also, *Stillmaker* v. *Dept. of Liquor Control* (1969), 18 Ohio St. 2d 200.

Counsel for appellant, in their brief, concede that appellant's "giveaway" games involve two of the three elements necessary to support a charge of gambling, *i. e., chance* and *prize,* but deny that the third element, *price,* which they contend is the real target of the gambling laws, is present. They argue that price is not involved in appellant's promotional games, because the chances to win prizes are available to the public without charge, and that appellant's hope of increased sales is insufficient to constitute "price."

It is stipulated that the majority of the persons who

participate in the games obtain their chances for a prize at the cash register, upon the purchase of merchandise, while a minority, who make no purchases, obtain their chances by merely asking for them.

We agree with appellee's contention that, because some portion of the purchase price of the merchandise bought goes to support appellant's games, payment of such portion by the majority of participants who make purchases constitutes payment of a price to participate in the game, notwithstanding a minority who make no purchases participate free.

For the foregoing reasons, we find that, the gaming or scheme of chance elements of *price, chance* and *prize* having been established by the record, appellant's operation of the promotional games of "Race to Riches" and "Pepsi-Cola Give-Away Program" on permit premises constitutes a clear violation of Regulation 53, Section II, of the Liquor Control Commission.

The judgment of the Court of Appeals is, therefore, affirmed.

*Judgment affirmed.*

O'NEILL, C. J., KERNS, CORRIGAN and LEACH, JJ., concur.

SCHNEIDER and DUNCAN, JJ., dissent.

KERNS, J., of the Second Appellate District, sitting for HERBERT, J.

ABELE, J., of the Fourth Appellate District, sitting for STERN, J.

DUNCAN, J., dissenting. I am constrained to dissent. The constitutional prohibition against lotteries, Section 6, Article XV of the Constitution of Ohio, has been implemented by the General Assembly in the enactment of R. C. Chapter 2915. In my view, Regulation 53, Section II of the Liquor Control Commission, had its ori-

gin in R. C. Chapter 2915, and, as such, is penal in nature, which demands a strict construction delimited by the purpose for its existence. After touching base with this guideline of criminal statutory construction, I agree, as does the majority, that the essential proof requirements of gambling, wagering, or lottery participation are price, chance and prize, with only price being in controversy in the instant case.

Any construction given the penal regulation of the Liquor Control Commission which is broader than the criminal statute would be uneven and intolerable.

I am unable to find, either from the stipulation of facts in this case or from inferences based on such facts, that any price is being paid by anyone. The only facts in evidence remotely concerning a relationship between the games and appellant's patrons are contained in the stipulations, as follows:

"(b) The majority of the Race to Riches cards are distributed * * * to persons who make purchases and pass through the checkout lines at plaintiff's various Kroger supermarkets * * *.

"Pepsi-Cola Give-Away Program

"8. The Pepsi-Cola Bottling Company * * * supplies Kroger * * * with Pepsi-Cola.

"9. Pepsi-Cola imprints playing card symbols under the cap liner of its bottle caps. * * * The majority of such card caps are distributed upon bottles of Pepsi-Cola and Diet Cola offered for sale by and through various retailers including plaintiff."

Those who have a relationship with the games and the materials used for them must be:

(1) Patrons who make purchases, receive the game materials, and then engage in playing the games.

(2) Patrons who make purchases, receive the game materials, and do not use them.

(3) Patrons who make purchases and refuse the materials.

(4) Persons who do not make purchases but obtain the materials and play the games.

As I understand the limits of the stipulation of facts, it denotes that there are more materials distributed to those in categories (1) and (2), than are distributed to those in category (4). There are simply no facts which indicate that those who have made purchases and play the games have paid any different price for appellant's products than those who receive the materials and do not use them, or purchasers who refuse to accept the materials. It must also be kept in mind that the materials are available without charge. Only a strained interpretation of the criminal law can serve to make one who buys products and receives game materials subject to criminal sanction, while one who gets them free is not subject to the sanction.

Finding consideration, as the Georgia court did in *Boyd* v. *Piggly Wiggly Southern* (1967), 115 Ga. App. 628, 155 S. E. 2d 630, amounts to clutching a flimsy straw for consideration completely out of keeping with our avowed adherence to the doctrine of strict construction of criminal statutes.

More palatable, but not convincing, are those cases which rest on the theory that the requirement of consideration does not necessarily need be a price paid by a player, but is satisfied by a benefit conferred on the promoter according to contract principles.

Returning to the facts for the moment, I find no *evidence* that the appellants have benefited from the game, unless their presence in this court gives rise to the inference that protection for a benefit is sought. Again, we have no evidentiary facts of the financial posture of these appellants directly related to the conducting of the games which indicate that prices were increased to finance the games.

As I see it, a reasonable interpretation of these gambling, wagering and lottery prohibitions is the intendment that certain something-for-nothing traits of many persons are not to be exploited to their detriment by others causing them personal losses of money or something of value. How can there be a violation when there has been no demonstrable loss to the participant?

The United States Supreme Court, in *Federal Communications Comm.* v. *American Broadcasting Co.* (1954), 347 U. S. 284, rejected the commission's contention that a radio or television give-away game with a promotional motive was supported by a consideration where the promoter receives a commercial benefit when the other elements of a lottery are present. In that case, a contestant did not have to visit the promoter's premises. The only discernible difference between that case and the instant case is that in the instant case a visit to the promoter's premises is necessary. However, such a visit to the promoter's premises does not supply the missing consideration, because that visit is of benefit to the promoter similar to the benefit which the broadcasting promoter receives, the difference being a matter of degree rather than kind. In neither case is money or a thing of value extracted from a player.

For analogous case decisions, see *Wrigley Stores* v. *Wayne* (1960), 359 Mich. 215, 102 N. W. 2d 545; *California Gasoline Retailers* v. *Re₃ al Petroleum Corp.* (1958), 50 Cal. 2d 844, 330 P. 2d 778; *Goodwill Advertising* v. *State Liquor Authority* (1962), 40 Misc. 2d 886, 244 N. Y. Supp. 322; *Caples Co.* v. *United States* (C. A. D. C. 1957), 243 F. 2d 232; *People* v. *Eagle Food Centers* (1964), 31 Ill. 2d 535, 202 N. E. 2d 473; *People* v. *Burns* (1952), 304 N. Y. 380, 107 N. E. 2d 498; *Clark* v. *State* (1955), 262 Ala. 462, 80 So. 2d 312; and *Cudd* v. *Aschenbrenner* (1962), 233 Ore. 272, 377 P. 2d 150.

In appreciation of the criminal parallel attendant to our inquiry herein, I have no comment on whether the games people play have redeeming social value; I would reserve for the General Assembly the decision as to the fate of promotional games of this nature. Therefore, I would hold that the games are not prohibited by the Ohio Constitution, the statutes, or the Regulations of the Liquor Control Commission.

Schneider, J., concurs in the foregoing dissenting opinion.