**ALBERTSON'S, INC., Plaintiff and Appellant,**

v.

**Honorable Robert B. HANSEN, Attorney General of the State of Utah, and Honorable R. Paul Van Dam, County Attorney of Salt Lake County, Defendants and Respondents.**

No. 15775.

Supreme Court of Utah.

Sept. 11, 1979.

---

Ricardo B. Ferrari, Salt Lake City, for plaintiff and appellant.

Robert B. Hansen, Atty. Gen., Michael L. Deamer, Michael N. Martinez, Asst. Attys. Gen., Theodore L. Cannon, Salt Lake County Atty., Donald Sawaya, Deputy County Atty., Salt Lake City, for defendants and respondents.

DURHAM, District Judge:

Plaintiff, a retail grocery chain, filed this action for a declaratory judgment, seeking a determination that its retail sales promotion known as "Double Cash Bingo" was

not within the definitions of "gambling" or "lottery" in Sec. 76–10–1101 of the Penal Code. The material facts were not in dispute. Plaintiff filed a motion for summary judgment that it was not subject to prosecution for violation of the Penal Code by conducting Double Cash Bingo. The defendants filed cross-motions to dismiss. The trial court entered judgment dismissing plaintiff's action. The judgment of the trial court is reversed. All statutory references are to U.C.A.1953. No costs awarded.

Double Cash Bingo was described as a game in which the player is given a bingo-type card and a disc containing numbers under opaque covers. The player uncovers the numbers on the disc. If the numbers can be placed in a winning bingo pattern on the card, the player receives a designated cash prize. The cards and disc were distributed at Albertson's locations free of charge to anyone requesting them. No purchase was required to obtain them and a review of the record does not disclose any circumstance which would prohibit a player from obtaining them by mail and thus participating in the game without even entering upon plaintiff's premises. The record shows further, however, that plaintiff experienced substantial increases in sales which it attributed to the success of the advertising and promotional aspects of the Double Cash Bingo program.

Albertson's conducted this promotional game for several weeks prior to March 3, 1978, throughout Utah and in other western states. On March 2, 1978, Albertson's was threatened with criminal prosecution, if the game were not discontinued. Albertson's discontinued the game and initiated this action.

The issue before the Court is whether or not the promotional scheme described above constitutes an illegal lottery within the meaning of Section 76–27–9 and Article VI, Section 27,[1] Constitution of Utah. Before the trial court, defendants relied primarily on *Geis v. Continental Oil Company*[2] to sustain the claim that Double Cash Bingo

was a lottery under Utah law. In *Geis,* the contestants filed an action to recover the prize they claimed to have won in a promotional contest sponsored by defendant. The defense relied upon an alleged failure to comply with the rules of the prize contest. This Court observed that the plaintiff in such a case must show first that the scheme was legal and that a valid and enforceable contract could therefore be formed. Otherwise, the aid of the courts might not be sought in the enforcement of an illegal agreement. As observed by Justice Crockett in a partially dissenting and partially concurring opinion in that case:

> . . . the defense of illegality of the contract was not asserted nor relied on, nor in any manner raised or presented in the district court . . . It is unnecessary to establish bad precedents as to both of the propositions . . . stated above. It has the potentially troublesome and unfair effect of deciding an important issue without giving the parties an opportunity to present evidence, or to argue and brief the matter, and without giving the trial court an opportunity to rule thereon. This seems particularly undesirable because there are so many advertising and promotion plans of this general character that such a ruling may have such far-reaching effects upon business and commerce.

The case now before this Court presents an opportunity to fully review and determine the questions decided by implication or directly in *Geis* without benefit of argument and briefing by the parties there. Further, the facts in *Geis* differ in some respects from those here. The scheme in *Geis* was certainly reviewed by this Court in light of the nature of plaintiff's participation in it. She had acquired no less than 522 cards or chances to win a prize by herself, her husband, and his employees. That activity may well have constituted such a distortion of the planned and anticipated course of the promotional scheme as

1. This section was previously designated Section 28.

2. 29 Utah 2d 452, 511 P.2d 725 (1973).

to take it outside the limits of any legitimate enterprise. We have no similar distortions before the Court in this declaratory judgment action, and must review the proposed promotional scheme in the context in which it was designed and intended to function in the usual case.

Article VI, Section 27, Constitution of Utah, provides:

> The Legislature shall not authorize any game of chance, lottery or gift enterprise under any pretense or for any purpose.

This Court has the responsibility of determining the elements of a "lottery" as set forth in that constitutional provision. Those elements have been well established in Utah and are virtually the same as are set forth in the statutory definition of a lottery contained in Section 76–10–1101(2) as enacted in 1973:

> (2) 'Lottery' means any scheme for the disposal or distribution of property by chance among any persons who have paid or promised to pay any valuable consideration for the chance of obtaining property, or portion of it, or for any share or any interest in property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift enterprise, or by whatever name it may be known.

It can be seen that from the above definition that, to be a lottery, this scheme must involve "property" (or "prize"), distribution by "chance," and the payment of "any valuable consideration for the chance". The existence of property to be distributed by chance here is obvious; the remaining question is whether Double Cash Bingo necessitates or involves the payment of any valuable consideration for the opportunity to play and the chance to win. Defendants argue, and a minority of courts in other jurisdictions have held, that the combination of inconvenience, effort, time, trans-

portation expense and "sacrificed alternatives" (such as traveling to another shopping location) on the part of players, with the increased profits received by the promoter because of the patronage, sales and general good will generated by the scheme, constitutes "consideration" within the meaning of the definition of a "lottery" under our statute.

■ This analysis, however, appears to overlook an important portion of our statutory language. A "lottery" in Utah does not exist merely by virtue of the presence of valuable consideration flowing to or from any element in the transaction. Rather, the statute specifically and directly requires the payment or promise to pay "any valuable consideration *for the chance* of obtaining property". (Emphasis added.) The exchange contemplated is the giving of something of value in return to the chance to win. The dispositive issue, therefore, is not what the promoter receives but what the player parts with. The participant in Double Cash Bingo acquires a chance to win by obtaining a disc and a card. He gives no more for that than the mere request. Although Albertson's received considerable benefits indirectly from the program, those benefits are not given, exchanged, or paid by customers or consumers in order to receive their chance to win. The profits to Albertson's are not "paid . . . for the chance of obtaining property" and thus cannot be part of the "valuable consideration" required by our statute to find a lottery.

■ Under this analysis, the only remaining elements of valuable consideration are the time, effort, inconvenience, and exercise of choice by participants. A majority of courts in other jurisdictions have found such elements to fall short of the requirements of valuable consideration.[3] *Cudd v. Aschenbrenner*[4] is illustrative of the majority rule, wherein the Oregon court presented the following analysis:

---

**3.** The majority includes Alabama, Arizona, California, Colorado, Illinois, Indiana, Maine, Michigan, Minnesota, Montana, New Hampshire, New York, Ohio, Oregon, Rhode Island, and Texas. The minority includes Delaware, Florida, Iowa, Nebraska and Oklahoma. See 29 A.L.R.3d 888.

**4.** 233 Or. 272, 377 P.2d 150 (1962).

**986**

. . . [N]o one could be rendered poor by participating in the plaintiffs' drawings. The worst that could happen to anyone would be that he would buy some groceries. But, if he purchased any, he would do so not in order to qualify himself as a participant in the drawing—for participation was free—but voluntarily. His purchase would not enhance in the slightest degree his chances upon the drawings. Participation in the drawings could not become for him a gambling tendency. There was nothing that anyone could do that would improve his prospects of winning . . . In order to participate in the drawings it was not necessary for anyone to spend a nickel in the store or in any other place. Tickets for the drawings and tickets to the parking lot (where the drawings occurred) were not for sale. They were free. Anyone who wished to do so could enter the parking lot and watch, free of charge, the drawings take place. This promotional scheme is a mere means of drawing customers to the plaintiff's stores . . . The scheme is not a lottery although the prize money is distributed by chance. It is not a lottery because there is no consideration which is in any way harmful to the participant. The participant parts with nothing of any value to himself.

The court in that case also observed that nothing can be regarded as consideration unless it is so viewed and treated by both parties, and that, where no purchase is required to participate, neither party to the transaction believed the customers efforts in participation constituted any valuable consideration.

■ To find that the effort required to pick up or obtain a card and disc from Albertson's alone is valuable consideration would invalidate any distribution-by-chance scheme for any property whatsoever where the participant is required to expend the slightest effort—mailing of a registration

ticket, for example, or presence at a drawing. The "consideration" paid by Double Cash Bingo players would appear to be indistinguishable from that expended by participants in any number of drawings and distributions conducted in this state.[5] Without more, the *valuable* consideration" required by our statute cannot be said to have been paid or required, and the scheme does not constitute a "lottery" prohibited by the Utah Constitution.

WILKINS, and HALL, JJ., concur.

MAUGHAN, Justice (dissenting):

For the following reasons, I dissent. The majority opinion relies on a most novel form of construction, restricting the language of a broad mandatory constitutional interdiction against lotteries to the current statutory definition. The majority proclaims it is the responsibility of this Court to determine the elements of a "lottery" as that term is set forth in the constitution, and then abdicates the responsibility and abandons precedent to restrict the term "any valuable consideration" to further conditions as set forth in the statute.

In my view, it is not wise to toy with a term so vital to our law, as consideration. Certainly, we should not judicially redefine it for the purpose of skirting the mandate of the constitution.

This interpretation, which restricts further the meaning of consideration, is antithetical to the command and intent of Article VI, Section 27, Constitution of Utah, viz., the legislature shall not authorize a lottery "*under any pretense or for any purpose.*"

If consideration may be restricted to a pecuniary basis, rather than the legal definition of the term, why may not the legislature declare any amount under fifty dollars shall not be deemed consideration? Why may not the legislature designate that any money contributed to a lottery conducted

---

5. Examples include the common everyday drawings conducted on local television, at church and club socials, as well as *state* drawings conducted to distribute sporting event tickets or game licenses, all of which we can properly take judicial notice under Rule 9, U.R.E.

by a charitable organization be deemed a contribution and not consideration, although a sizeable prize may be awarded? The intent is clear, any scheme involving a prize, chance, and consideration is prohibited, and no matter how cleverly devised or characterized the plan (such as deeming it a promotional game), the blanket constitutional proscription is applicable.

Plaintiff, a retail grocery chain, filed this action for a declaratory judgment, seeking a determination that its retail sales promotion known as "Double Cash Bingo" was not within the definitions of "gambling" or "lottery" in Section 76–10–1101 of the Penal Code. The material facts were not in dispute. Plaintiff filed a motion for summary judgment that it was not subject to prosecution for violation of the Penal Code by conducting Double Cash Bingo. The defendants filed cross-motions to dismiss. The trial court entered judgment dismissing plaintiff's action. The judgment of the trial court should be affirmed. All statutory references are to U.C.A., 1953.

Owing to the societal impact of the issues here presented, I deal with them in extenso.

Double Cash Bingo was described as a game in which the player is given a bingo-type card and a disc containing numbers under opaque covers. The player uncovers the numbers on the disc. If the numbers can be placed in a winning bingo pattern on the card, the player receives a designated cash prize.

Albertson's conducted this promotional game for several weeks prior to March 3, 1978, throughout Utah and in other western states. On March 2, 1978, Albertson's was threatened with criminal prosecution, if the game were not discontinued. Albertson's discontinued the game and initiated this action.

Before the trial court, defendants relied primarily on *Geis v. Continental Oil Company*[1] to sustain their claim Double Cash Bingo was a lottery under Utah law. Plaintiff contends the *Geis* case provides no prece-

dent to resolve the present issues because the statutes upon which it was based have been superseded by the enactment of Section 76–10–1101, et seq.

In *Geis*, the contestants filed an action to recover the prize they claimed they had won according to the rules in a promotional contest sponsored by defendant. The defendant contended the rights of a contestant in a prize contest were limited by the terms of the offer, and there must be compliance with those terms before a contract can be formed.

This Court observed that at the inception of such an action, a contestant seeking to enforce rights allegedly acquired in a prize-winning contest must prove the scheme was legal, for the courts uniformly have refused to lend their aid in the enforcement of an illegal agreement. No private rights can arise from a prize-winning contest which is considered illegal, such as a lottery which has been prohibited by constitutional or legislative provisions.

This Court cited Article VI, Section 27,[2] Constitution of Utah, which provides:

The Legislature shall not authorize any game of chance, lottery or gift enterprise under any pretense or for any purpose.

The relevant statutory definition of lottery was quoted; it is Section 76–27–9:

A lottery is any scheme for the disposal or distribution of property by chance among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any scheme or any interest in such property, upon any agreement, understanding or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle or gift enterprise, or by whatever name the same may be known.

This Court stated the statutory elements of a lottery were: (1) prize; (2) chance; (3) any valuable consideration. The elements of prize and chance in *Geis* were deemed

1. 29 Utah 2d 452, 511 P.2d 725 (1973).

2. This section was previously designated section 28.

obvious, the difficult issue was whether there was a valuable consideration. This Court found the definition of that element in *State ex rel. Schillberg v. Safeway Stores, Inc.*[3] was of great significance not only because of the similarity of Washington's constitutional and statutory provisions to those of Utah, but in the prior Utah case of *Blair v. Lowham*[4] this Court had followed the statutory interpretation of the court in *State v. Danz.*[5]

In the *Schillberg* case the issue was whether a game called "Bonus Bingo" promoted by Safeway, was a lottery or merely an advertising device of a type widely employed in merchandising. To participate in the game, the contestant received the slips and booklets free of charge without the necessity of making a purchase.

The court initiated its analysis with an observation that the Constitution of Washington[6] prohibited *any* lottery; therefore, to give effect to such a broad interdiction the courts must examine thoroughly any scheme or device which appears even superficially to constitute a lottery.

The court characterized the basic issue as "whether a member of the public who participates in Bonus Bingo as a player seeking to win prize money, even though he pays no fee, brings no tickets, and wagers no property, tangible or intangible, advances what in law would constitute a consideration upon that chance to win a prize."

It further observed:

Since the legislature of this state may not, under the constitution, directly authorize any kind of lottery at all, it cannot, by means of a loose, uncertain or inapt definition, authorize indirectly that which the constitution forbids it to do directly. Given a scheme involving a prize to be won purely by chance or lot, the courts will look most closely to see if any substantial consideration moves from player to promoter, a procedure we think

not only enjoined upon us by the constitution but also called for by the language of the lottery statute (R.C.W. 9.59.010) which used the broad term *consideration* and not the narrower term *property* or *thing of value.* Encompassed then within the term *consideration*, as the third element of lottery, would be those acts of forbearances, promises, or conduct which in law are sufficient to support an agreement.

Under our constitution and lottery statute, therefore, one need not part with something of value, tangible or intangible, to supply the essential consideration for a lottery. He may, in order to secure a chance to win a prize awarded purely by lot or chance, supply the consideration by his conduct or forbearance which vouchsafes a gain or benefit to the promoter of the scheme. The benefit or gain moving to the one need not be the same as the detriment to the other. Consideration for a lottery may be both gain and detriment or one without the other.

All of the obvious paraphernalia inherent in a lottery, except consideration, existed in Bonus Bingo from the outset. The lure of a prize awarded upon chance or lot to a few winners among numerous players manifested the first two elements, prize and chance. Less obvious, but, nevertheless, present, was the other element, consideration. Benefits in the form of increased sales, good will and public response to the advertising of Bonus Bingo amounted to a consideration valuable indeed to the promoters and supplied the third element, consideration.

.     .     .     .     .

Here there was a great gain and an appreciable loss. Safeway gained as a consequence of its attracting thousands of persons to its stores who would not otherwise go there; it won the time,

---

**3.** 75 Wash.2d 339, 450 P.2d 949 (1969).

**4.** 73 Utah 599, 276 P. 292 (1929).

**5.** 140 Wash. 546, 250 P. 37, 48 A.L.R. 1109 (1926).

**6.** Art. 2, § 24: "The legislature shall never authorize any lottery   .   .   ."

thought, attention and energy of members of the public in studying Safeway's advertising and journeying at least once to its stores; and it won an actual increase in patronage from them, too. The players, on the other hand, wagered their time, attention, thought, energy, and money spent in transportation studying Safeway's advertising and in journeying at least once per game to a Safeway Store for a chance to win a prize—all of which, we think amounted to a valuable consideration moving from the players to the promoters.[7]

In the *Geis* case this Court adopted the concept of the Washington court concerning consideration and rejected the position of some jurisdictions that a lottery is a special kind of contract, requiring a special kind of consideration, such as money or its equivalent.[8] This Court stated:

> . . . However, in light of this state's constitutional mandate and legislative enactments pursuant thereto, this court would be engaging in some type of sophistry to hold there was consideration present to support a bargain but not to provide the element of consideration to constitute a lottery.[9]

Under the *Geis* case plaintiff's promotional game would constitute a lottery, although the contestants paid no consideration in the form of pecuniary value to participate. The time, effort, attention and money spent in transportation journeying to the store was consideration moving from the players to the promoter. The benefits moving to plaintiff in the form of increased sales and good will in response to this promotional device also amounted to a valuable consideration. The extent of this consideration appears in an affidavit submitted by plaintiff's agent to the court, when plaintiff sought a temporary restraining order against the prosecutor. To substantiate a claim of irreparable injury the affidavit provided:

7. That affiant's subordinate district managers and store managers have reported to him that, by March 10, 1978, the Utah Division's gross reveneus [sic] will have been approximately $250,000.00 less and customer calls will have been 100,000 less than during the corresponding week of February, 1978, and that affiant's personal observations and personal review of summaries of the revenue and patronage records maintained by store-level employees on a daily basis in the regular course of their duties, corroborates his subordinates' projections . . .

Plaintiff contends the concept of "valuable consideration" set forth in *Geis* has been nullified by the subsequent enactment in Section 76-10-1101, U.C.A., 1953, as enacted 1973. This statute provides:

Definitions.—For the purpose of this part: (1) 'Gambling' means risking anything of value for a return or risking anything of value upon the outcome of a contest, game, gaming scheme, or gaming device when the return or outcome is based upon an element of chance and is in accord with an agreement or understanding that someone will receive something of value in the event of a certain outcome, and gambling includes a lottery; gambling does not include:

(a) A lawful business transaction, or

. . . . .

(2) 'Lottery' means any scheme for the disposal or distribution of property by chance among persons who have paid or promised to pay any valuable consideration for the chance of obtaining property, or portion of it, or for any share or any interest in property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift enterprise, or by whatever name it may be known.

(3) 'Gambling bet' means money, checks, credit, or any other representation of value.

---

7. Pp. 955–957 of 450 P.2d.

8. See *Cudd v. Aschenbrenner*, 233 Or. 272, 377 P.2d 150 (1962).

9. At pp. 455–456 of 29 Utah 2d, at p. 728 of 511 P.2d.

Plaintiff urges that to constitute "gambling" under the new statute the "value" which must be risked is limited to something of pecuniary value as defined in subdivision (3) under the term "gambling bet," viz., money, checks, credit, or the equivalent thereto. Since the participants in plaintiff's promotional contest do not risk anything of pecuniary value, it is claimed that "gambling" is not involved.

In subdivision (2) the legislature retained the prior statutory definition of "lottery" as contained in Section 76–27–9. In subdivision (1) of the current statute "gambling" is defined in terms of risking anything of "value," while the definition of "lottery" contemplates a person taking a chance and paying "any valuable consideration." Plaintiff urges the elements set forth in the definition of "gambling" also limit the elements of "lottery" because subdivision (1) of the statute provides "gambling includes lottery."

The term "includes" is ordinarily a term of enlargement and not of limitation.[10] The term "including" as a work of enlargement, implies that something else has been given beyond the general language which precedes it; that it adds to the general clause a species which does not naturally belong to it; that it is the equivalent of "also."[11]

Thus the provision in subdivision (1) stating that "gambling includes a lottery" enlarges the definition of gambling insofar as a lottery is concerned to embrace the specific elements of a lottery as set forth in the definition in subdivision (2). In other words, subdivision (1) should be read as defining "gambling" as it is set forth in both (1) and (2). Furthermore, since a type of gambling called a "lottery" is specifically defined, the specific definition controls over the more general definition of "gambling."[12] The new statutory provisions set forth in Section 76–10–1101, do not compel a decision limiting the terms "any valuable consideration" to a consideration of pecuniary value.

Plaintiff contends its promotional device is exempt under subdivision (1)(a) of 76–10–1101 as "a lawful business transaction."

Article VI, Section 27, Constitution of Utah prohibits in the broadest language, in mandatory terms, legislative authorization of *any* lottery "under any pretense or for any purpose." If, in fact, any scheme embraces the elements of a lottery, the legislature cannot avoid the constitutional prohibition by vague or inapt definitions or creating exemptions. In *State v. Deniff*[13] the legislature passed an act, authorizing and licensing punch boards as trade stimulators. The court declared the act void and invalid, as violative of the state constitutional prohibition.[14]

In the *Schillberg* case,[15] the court observed the constitutional provision against lotteries was mandatory and self-executing. The court stated:

> . . . Being self-executing the legislature cannot, by loose, vague or inapt definition of lottery, constitutionally authorize indirectly in law what the courts reasonably find to be a lottery in fact. . . .[16]

Plaintiff further contends conducting its promotional game is not a criminal act by reason of Article VI, Section 27, Constitution of Utah. Plaintiff urges this constitu-

---

**10.** *Schwab v. Ariyoshi*, Hawaii, 564 P.2d 135, 141 (1977); *People v. Western Air Lines, Inc.*, 42 Cal.2d 621, 268 P.2d 723, 733 (1954).

**11.** *State v. Montello Salt Co.*, 34 Utah 458, 463–464, 98 P. 549 (1908).

**12.** ". . . [where] a statute has a general and a particular provision, if the case under consideration falls within the particular provision, this provision will govern, and the general one must be taken to affect only those cases within the general language of the statute which do not fall within the particular enact-

ment. . . ." *Campbell v. Commonwealth Plan, Inc.*, 101 Ariz. 554, 422 P.2d 118, 122–123 (1966).

**13.** 126 Mont. 109, 245 P.2d 140 (1952).

**14.** Also see *State v. Nelson*, 210 Kan. 439, 502 P.2d 841 (1972).

**15.** Note 3, supra.

**16.** At pp. 952–953 of 450 P.2d.

tional provision was intended only to prohibit legislative authorization of a state, public lottery. It cites the proceedings of the constitutional convention to sustain its claim.

The brief discussion concerning section 27 is set forth on pages 937–938 of the Proceedings Constitutional Convention, Utah, Vol. 1 (1895). An opponent to the section, Mr. Eichnor, considered it was unnecessary because he thought there was no danger the State of Utah would want to establish a lottery or would authorize anyone to establish a lottery. A proponent, Mr. Bowdle, expressed the opinion that the provision was essential to avert the experience of the first legislature of North Dakota, which was besieged by the Louisiana lottery trying to get legislative authorization to operate in that state. (The Louisiana lottery was a grant by the state of a license to a private company, which conducted a lottery as a business for profit.) Mr. Van Horne, a proponent, stated that it would be well to leave in the constitution a prohibition against granting a franchise for a lottery. Mr. Evans, a proponent, stated if the section were stricken, there would be a combination of people who would importune the incoming legislature for the purpose of securing a franchise to carry on lotteries and games of chance. Mr. Evans further stated the section would not prohibit horse racing. Mr. Varian, a proponent, concluded the discussion with a comment that many legislatures had attempted, even though faced with a constitutional provision, to enact lottery schemes for the supposed benefit of the state. Such action, in his opinion, was "a prostitution of public functions." The motion to strike the section was rejected. A review of the foregoing indicates an intent to prohibit legislative authorization of a lottery whether by a franchise granted to a private individual or by general legislation.

In *State v. Village of Garden City* [17] the issue before the court was whether certain statutes violated Art. 3, Sec. 20, of the Constitution of Idaho. This section provided:

> The legislature shall not authorize any lottery or gift enterprise under any pretense or for any purpose whatever.

Defendants urged the framers of the Idaho Constitution did not have in mind the devices and schemes under consideration, when the section was drafted. The court responded:

> Debates in the constitutional convention may be resorted to, for purposes of interpretation, where the language of a provision is ambiguous or uncertain; but where it is clear and plain, the only way we can determine what the members of the constitutional convention had in mind and meant is by what they said in the provision adopted. In the instant case there is no ambiguity. The provision under consideration is plain, positive and mandatory. The framers prohibited lotteries then known or that the ingenuity of man might thereafter invent, by whatever names they might be called, or in what manner they might operate. The provision under discussion specifically prohibits any lottery for any purpose then known or thereafter invented or discovered. The lotteries sought to be prohibited include, among other things, the evils here complained of.
>
> This provision of the Constitution, Art. 3, § 20, is negative and prohibitory, is self-acting and needs no legislation to carry it into effect, and it cannot be annulled in the manner attempted . .

The reasoning of the Idaho court is applicable to plaintiff's claim. The language of Art. VI, Sec. 27 is clear, plain, and unambiguous; and, therefore, this Court may not resort, for purposes of interpretation, to the debates in the constitutional convention. Section 27 means precisely what it states, the legislature may not authorize *any* lottery whether it is conducted by the state or a private individual.

Plaintiff further contends the ruling in the *Geis* case is unsound and should be disavowed by this Court.

17. 74 Idaho 513, 265 P.2d 328, 334 (1953).

There is a distinct division of authority as to what constitutes sufficient consideration to support a lottery. This division is set forth in 29 A.L.R.3d 888, Anno.: Promotion Schemes Of Retail Stores As Criminal Offense Under Anti Gambling Laws, Sec. 5, pp. 896–903. Some courts hold any consideration which will support a simple contract is sufficient to constitute a lottery and mere participation in a scheme may provide such consideration.[18] Another group of courts have held although no purchase of merchandise is necessary to participation, if any participants in the promotional scheme are also customers of the sponsoring store, the consideration present is sufficient to render the scheme a lottery as to all the participants.[19] The third group of courts have held the consideration sufficient to support a lottery must have an economic value, and neither participation in a promotional scheme nor the inconvenience arising therefrom constitutes consideration.[20]

The *Schillberg* case and *Lucky Calendar Co. v. Cohen*[21] are well reasoned and based on sound public policy; both adhere to the simple contract theory as a basis to find consideration in a scheme alleged to be a lottery.

In the *Lucky Calendar* case the court observed the proposed scheme of advertising injected into a natural free market dealing with basic commodities of everyday living all of the distracting consequences of a lottery. The court expressed the public policy as follows:

. . . It is manifestly not in the public interest to permit the element of chance to control such a vital commodity as food, far-reaching as it is in its effect on the national economy. To do so, in the largest industry in the country would be to encourage a battle of industrial giants for increased business to the detriment of the public. . . . [22]

In *Schillberg*, the court stated:

. . . The antigambling laws are designed not only to prevent loss but to preclude some kinds of gain to the promoter of a lottery from reaping an unearned harvest at the expense of the players; to prevent the wary from preying upon the unwary; and to discourage the overly shrewd from exploiting the natural yearning in most everyone to get something for nothing; and to put a damper on the actions of those who receive from the device much more than they part with in prizes. If, under our mores, it is bad for a man to lose his property on pure chance or lot, it is equally bad for a man to gain property on the same pure chance or lot.[23]

If the evil of gambling be the dissipation of resources which should be devoted to family purposes, then a merchant conducting a promotional scheme, such as, Double Cash Bingo, incites the same evil. A family of limited assets, rather than comparing prices to find the best value, will be distracted by the lure of a prize and patronize the establishment promoting a scheme based on chance. The promotional scheme is a guise designed to inveigle the unwary to spend family funds at one mercantile establishment, without giving adequate regard to the prices of the competitors. The interpretation of this Court in *Geis* of the term "valuable consideration" is consonant with the public policy and should not be disavowed.

Plaintiff's claim that the language defining "gambling" in Sec. 76–10–1101(1) is void for vagueness need not be considered

---

**18.** In addition to the cases cited in § 5(a), p. 896 of the annotation, see *Mobil Oil Corporation v. Danforth*, Mo., 455 S.W.2d 505 (1970); *People v. Brundage*, 381 Mich. 399, 162 N.W.2d 659 (1968); *State ex rel. Schillberg v. Safeway Stores, Inc.*, note 3, supra.

**19.** In addition to the cases cited under § 5(c), pp. 901–903 of 29 A.L.R.3d, see *Kroger Co. v. Cook*, 24 Ohio St.2d 170, 265 N.E.2d 780 (1970);

*Tierce v. State*, 122 Ga.App. 845, 178 S.E.2d 913 (1970).

**20.** See the cases set forth in § 5(b), pp. 897–898 of 29 A.L.R.3d.

**21.** 19 N.J. 399, 117 A.2d 487 (1955).

**22.** At p. 497 of 117 A.2d.

**23.** At p. 956 of 450 P.2d.

in this opinion, since the specific definition of lottery, rather than the general definition of "gambling" has been utilized to resolve the issues in this case.

CROCKETT, Chief Justice (joining in the dissent with added comments).

I concur with the dissent of Justice Maughan and the authorities therein cited. But because of my strong conviction that the main opinion is mistaken both as to legal principle and as to policy, I make some additional comments.

In regard to whether there is a consideration passing from its customers to the plaintiff: it is stated that there is none because the customer is free to choose whether he will go to plaintiff's store, and he pays nothing for the bingo card. I think any fair and realistic analysis of the situation will reveal that there is in fact a detriment to the customer, suffered at the request of the plaintiff, which passes as a benefit to the latter.

It would be fatuous beyond belief for anyone to argue that the plaintiff spends its many thousands of dollars on such a promotion without receiving anything of value therefrom. If the plaintiff does thus receive value in increasing its patronage, and it is absolutely certain that it does, the question arises: whence is derived this substantial material wealth it acquires. If it comes from nothing, the supply would seem to be quite inexhaustible. But in this practical world, the inexorable rule is that it is impossible to make something from nothing. It is equally inexorable that the thing of substantial value which comes to the plaintiff can come from only one source. That is, from the individual customers the game attracts to its store. This has to be true no matter how small the contribution of each individual customer may be.

Suppose two stores, A and B are side by side, and that all other factors which would draw customers are exactly equal. They should normally draw about an equal number of customers. But if store A provided the Double Cash Bingo by which its customers have a chance for a prize, it would draw more customers than store B. Now suppose that the stores are one mile apart. It would take some proportionally greater reward to induce customers nearer store B to go to store A; and as the distance between the stores increased, the inducement offered would have to be proportionally increased. By supposing increasing distances, it should be plain that there must be some real inducement for a customer to go to store A, rather than to store B. The logic is inescapable that in offering its Double Cash Bingo, store A must be giving something of sufficient value to persuade customers to go to its store, rather than to store B; and that each customer gives some benefit of at least equal value to plaintiff, otherwise we may be sure that plaintiff would not operate the game. Further, each customer who is thus induced to enter store A does something he would not otherwise do. Therefore, he thus suffers a detriment to that extent and so contributes his portion, however small that may be, to the total value received by the plaintiff in this Double Cash Bingo plan. It is thus inescapable that there is a consideration on both sides of the equation.

The argument that playing bingo to receive a reward based on chance is not a violation of the prohibitions of the constitution and the law, because it involved but minimal contribution and minor inconvenience to the customers, is simply the old but fallacious argument that a little violation of the law does no great harm and should be tolerated. It seems to me that the mere statement of the proposition destroys the argument. The real evil is that if a little violation of the law is thus countenanced, where and by whom is the line to be drawn between a little and a lot; and where will be the limitation on such schemes.

It is not surprising that due to certain propensities of human nature, the customer may want to get something for nothing, based on chance. But looked at realistically, this is no different in principle than putting a nickel in a slot machine with the same expectation; and this bingo plan can be nothing other than an attempt to delude

the customers into believing they are getting something for nothing, based on chance.

A great deal more could be said about what I think are the evils of permitting businesses to depart from traditional values of business competition, based on quality of merchandise and service, and to substitute therefor the specious but hollow allurements of gambling and lotteries. It not only ignores the interdiction of our constitution, but it opens the way for the giants in merchandising, (which seem to be ever increasing in size) to engage in games with each other in attempting to delude the public into thinking they are getting something for nothing. Whereas, it is undeniable that, to the extent money is spent on bingo or other such illusory schemes, the public is actually deprived of that value in merchandise and services. In addition to those direct adverse effects upon the public, the majority decision provides a means for the giant chains to use these deceptive games of chance in unfair competition with the many small and independent operators, and thus drive them out of business, with the concomitant ramifying evils that result therefrom.

In summary, it is my judgment that the trial court correctly analyzed plaintiff's scheme for what it is, and adjudicated it to be in violation of the provisions of our constitution and our laws. Accordingly, I would uphold the judgment.

STEWART, J., having disqualified himself does not participate herein.

DURHAM, District Judge, sat.